# Peoples Bank of Lewisburg v. Jefferson County Savings Bank.

*Action for Money had and received.*

1. *Drafts; effect of restricted indorsement.*—The indorsement upon drafts, notes, checks or bills of exchange determine the relation of the parties thereto; and where the owner of the draft indorses it to a person or bank "for collection" or "for account of" or "on account of" the owner, such indorsement is a restricted as distinguished from a general indorsement, and gives notice that the draft is the

property of the owner who so indorsed it, and that it is no longer negotiable paper; and no one into whose hands it comes can claim protection as an innocent purchaser.

2 *Same; effect of restricted indorsement on collecting bank.*—Where a bank collects money upon a draft sent to it by another bank to which it was indorsed for collection by the owner with a restricted indorsement, the collecting bank holds the money collected as the money of the owner, and has no authority to apply it to the payment of an indebtedness due it from the forwarding bank, irrespective of any understanding or agreement that may have existed between it and such forwarding bank, who was but the agent for collecting for the owner.

3. *Same; same; case at bar.*—In an action for money had and received against a bank for money which it had collected on a draft, it was shown that plaintiff, being the owner of a draft, indorsed it to a bank "Pay" to said bank "for account of" plaintiff, which bank indorsed it "Pay" to order of defendant "for collection only for acct.," and sent it to defendant in a letter which stated that the draft was sent for collection and credit. The forwarding bank was indebted to defendant in a sum greater than the amount of the draft; and, having collected the draft, defendant credited the forwarding bank with the money collected, and mailed notice of such credit within banking hours on the day the collection was made. On the same day the forwarding bank failed and ceased to do business; but defendant had no knowledge of such failure before the said notice was sent. There was an arrangment between the plaintiff and the forwarding bank that when drafts sent by the former to the latter were collected, and the amounts thereof reported to and placed to the credit of plaintiff, —but not before—the plaintiff would draw for such amounts; but plaintiff was never indebted to said bank. No report was ever made to plaintiff by the forwarding bank of the collection of the draft in suit, nor was the amount thereof ever put to plaintiff's credit and plaintiff never drew against the amount of the draft. *Held:* That defendant, the collecting bank, was liable to the plaintiff for the proceeds of the draft collected by it; the restricted indorsement giving it notice of plaintiff's ownership, and making the appropriation by it of such proceeds unauthorized.

APPEAL from the City Court of Birmingham.

Tried before the Hon. W. W. WILKERSON.

This was an action of assumpsit brought by the appellant, the Peoples Bank of Lewisburg, Tennessee, against the appellee, the Jefferson County Savings Bank, to recover the sum of $750, alleged to have been had and received by the defendant for the use of the plaintiff. The facts of the case are sufficiently stated in the opinion. The cause was tried by the court without the intervention of a jury, and upon the hearing of all the evi-

dence, the court rendered judgment for the defendant. The plaintiff appeals, and assigns this judgment as error.

J. Q. COHEN, for appellant.—1. The endorsement by the appellant (the plaintiff below) on the draft "for account" is to be construed as if it were "for collection." *Bank of Metropolis v. First Nat. Bank of Jersey City*, 19 Fed. Rep. 301; *White v. Miner's Nat. Bank*, 102 U. S. 50.

2. The course of dealing between the Commercial National Bank and the Jefferson County Bank, and the letter of advice from the Commercial National Bank to the Jefferson County Bank, should not have been admitted in evidence over appellant's objections, because the indorsement on the draft by the Lewisburg Bank when the draft was sent by it to the bank at Nashville was a *restricted endorsement*, and was notice to the Jefferson County Savings Bank, that the title to the draft and the right to its avails, was not in the Commercial National Bank, but was in the Peoples Bank of Lewisburg (the plaintiff), and it could not be varied by testimony as to the course of dealings between the Commercial National Bank and the appellee, (the Jefferson County Saving Bank.)—*Sweeney v. Easter*, 1 Wallace (U. S.) 166; *White v. Miners National Bank*, 102 U. S. 658; *Bank of Metropolis v. First National Bank of Jersey City*, 19 Fed. Rep. 301; *Hamilton v. First Nat. Bank of Jersey City*, 46 New Jersey Law 604; *Mechanics Bank v. Valley Packing Co.*, 70 Mo. Sup. Ct. 643; 4 Mo. Ct. Appeals 200; *Commercial Bank v. Hamilton Bank*, 42 Fed. Rep. 880; *1st. Nat. Bank. v. Bank of Monroe*, 33 Fed. Rep. 408; Morse on Banks and Banking, (2 ed.), p. 422.

3. The indorsement of the Peoples Bank of Lewisburg is without ambiguity and requires no explanation either by parol proof or resort to usage. It does not transfer to the Commercial Bank the title to the paper, nor the ownership of the money, when received, nor to any one having possession of the paper or collecting same under the Commercial National Bank.—*White v. National Bank*, 102 U. S. 658; *Mechanics Bank v. Valley Packing Co.* 70 Mo. *supra*; s. c. 4 Mo. Ct. Appeals 200; *Bank of Metropolis v. First Nat. Bank of Jersey City*, 19 Fed. Rep. 301.

4. The indorsement "for account" and "for collec-

tion" both being restrictive indorsements, and neither passing title to the draft nor its proceeds, the indorsement prevented further circulation of the paper and its effect was limited to an authority to collect it for the indorser, the Peoples Bank of Lewisburg; and the Jefferson County Savings Bank could not credit its avails against the Commercial National Bank of Nashville. *Sweeney v. Easter*, 1 Wallace 166; *Merchant's Bank of St. Paul v. Nanson*, 53 Amer. Rep. 5; *Bank of Metropolis v. First Nat. Bank of Jersey City*, 19 Fed. Rep. 301; *Hoffman v. First Nat. Bank of Jersey City*, 46 N. J. Law 604; Morse on Banks (2 ed.), pp. 419, 420, 422, and 423.

5. Whenever by express agreement between the parties, a sub-agent is to be employed by the agent to receive money for the principal, or where an authority to do so may fairly be implied from the usual course of trade, or the nature of the transaction, the principal may treat the sub-agent as his agent, and when he has received the money may recover it an action for money had and received.— *White v. Smin*, 3 Howard U. S. Sup. Ct. 633; *Bank of Metropolis v. 1st Nat. Bank Jersey City*, 19 Fed. 301; Morse on Banks and Banking (2 ed.), p. 420.

6. The mere usage and course of dealing between banks in the transmitting of bills and notes for collection, by which they mutually credit the avails on account to overbalances due cannot deprive a third person, the real owner of the bills or notes, of his rights.— *Hackett v. Reynolds, Lamberton & Co.* 114 Penn. 328; *Bank of Metropolis v. 1st Nat. Bank Jersey City*, 19 Fed. Rep. 301: Morse on Banks (2 ed.), pp. 419, 420, 422, 423. The plaintiff's (the Peoples Bank of Lewisburg), indorsement upon the draft was plain and its legal force cannot be defeated by resort to usage and custom, or by any method of book keeping.

7. All question as to who is entitled to recover is saved, even where the insolvency of the immediate or remitting bank (the Commercial National) does not occur until after credit is given by the collecting bank (the Jefferson County Savings Bank), if the indorsement by the owner of the paper, (in this case the Peoples Bank of Lewisburg), is "for collection," or as in this case, its equivalent as far as title and notice is concerned "for account of." *Kauffman v. 1st Nat. Bank Jersey City*, 46 N. J. Law 604; *Cecil Bank v. Tanner*, 22 Md. 148; *Com-*

*mercial Nat. Bank of Cincinnati, v. Hamilton Nat. Bank of Ft. Wayne,* 42 Fed. Rep. 880.

1. E. K. CAMPBELL, *contra.*—A bank which sends paper for collection through another bank impliedly contracts that it shall be collected in the usual mode adopted by its correspondents and other banks.—*Howard v. Walker,* 21 So. W. Rep. (Tenn.) 897 ; *Freeman's Bank v. Nat'l. Tube Works,* 151 Mass. 418.

2. The collection and credit by the Birmingham bank upon the account of the Nashville bank before insolvency disclosed was a completed transaction. "It was the same as though the money had actually reached the vaults of" the Nashville bank.—*Com. Bank of Penn. v. Armstrong,* 148 U. S. 50–58; *Com. Bank v. Armstrong,* 39 Fed. Rep. 648 ; *Freeman's Bank v. Nat'l. Tube Works,* 151 Mass. 418; *Howard v. Walker,* 21 So. W. Rep. (Tenn.) 897 ; *Briggs v. Central Nat. Bank,* 89 N. Y. 182 ; *Charlotte Iron Works v. Am. Ex-Bank,* 34 Hun (N. Y.) 26.

3. It is competent to read into the respective indorsement of the Lewisburg bank its contract and understanding with the Nashville bank.—*Com. Nat. Bank v. Armstrong,* 39 Fed. Rep. 690.

4. The collecting bank is the agent of the intermediate bank and in no sense the agent of the owner.—*Hoover v. Wise,* 91 U. S. 30, and cases there cited.

5. The Birmingham bank had the right to credit the proceeds of the draft upon the Nashville bank's account, by usage and in this case also by special instruction.—*Com. Nat. Bank v. Armstrong,* 148 U. S. 58 ; *Howard v. Walker,* 21 So. West. Rep. 897 ; *Freeman's Bank v. Nat'l. Tube Works,* 151 Mass. 418–19; *Ayer v. Bank,* 79 Mo. App. 21.

6. The Lewisburg Bank when it forwarded this draft to its correspondent, intended to part with the ownership and title of the draft so far as to authorize the Nashville bank to collect the same and pass the proceeds to its credit as distinguished from collecting and remitting the proceeds. In other words, it was intended by the character of the endorsement and by the disposition authorized of the proceeds, that the relation of creditor and debtor should exist and not merely the relation of principal and agent.

7. The limitation of the right of the Lewisburg bank

to draw against the amount of the draft, only after the collection was made and notice of it given to that bank, was a limitation as to the time when the money could be drawn out, made by the Nashville bank to escape any. chance of loss itself, by a failure in the collection of the draft, and was not intended to alter the efficacy which the peculiar indorsement under the understanding between the banks gave to the paper and its proceeds.— *Commercial Nat. Bank v. Armstrong*, 39 Fed. Rep. 690.

COLEMAN, J.—The appellant bank sued the defendant in assumpsit for money had and received. The evidence is without conflict, and we will state the facts, substantially, which gave rise to the demand. On the 17th day of March, 1893, R. A. Wilkes drew a check as follows:

"$750.00.      Birmingham, Ala., March 17th, 1893.

"At sight pay to the order of Beatty & Orr seven hundred and fifty dollars, value received, and charge to the account of                                      R. A. WILKES."

"To  Tennessee  Packing  Co., Birmingham, Ala."

Written across the face of the draft was "Accepted, payable at Jefferson County Savings Bank, Birmingham, Ala.          Tennessee Pa'g. Co., by R. A. Wilkes."

It was indorsed as follows, with erasures:

"Beatty & Orr

"No. 519

"Pay to the order of F. Porterfield Cas. for collection only for account Peoples' Bank of Lewisburg, Tenn.
                              "R. A. McCord, Cash."

This indorsement as erased was followed by the following indorsement: "Pay  Commercial  Nat'l  Bank, Nashville, Tenn., or order for account of People's Bank, Lewisburg, Tenn.              "R. A. McCord, Cash."

"No. 17925.

"Pay to the order of Jeff. Co. Sav. Bk. for collection only for acct.

          "Commercial Nat'l Bank, Nashville, Tenn.

                    "F. Porterfield, Cash."

The draft was paid to the Jefferson County Savings Bank on March 25th, 1893, and by that bank placed to the credit of the Commercial National Bank, and notice of the collection and credit mailed to the Commercial National Bank within banking hours on the same day. On the

day of the payment of the draft in Birmingham, the 25th of March, the Commercial Bank, doing business in Nashville, Tenn., closed its doors and ceased to do business. The Jefferson County Savings Bank had no notice of its failing condition until after the collection of the draft, and notice of the collection and credit had been mailed. At the time of its failure the Commercial Bank was indebted to the Jefferson County Savings Bank in excess of the amount collected and credited. The draft was sent by the Commercial Bank to the Jefferson County Savings Bank in a letter, which stated that the draft was sent for collection and credit.

The question is, whether the money when collected belonged to the plaintiff bank, of which fact the collecting bank had notice, or was it the money of the Commercial Bank, and under the written authority contained in its letter or the usage of the banks, did the collecting bank have authority to credit the amount collected in payment of the indebtedness due it from the Commercial Bank? The cashier of the plaintiff bank testified that plaintiff had an arrangement with the Commercial Bank with regard to drafts sent to it by plaintiff, to the effect that when the drafts were collected and amounts reported and placed to credit of plaintiff, the latter would draw for the amount, but not before it was reported collected, and that no report of the collection of the draft was ever made by the Commercial Bank; nor the amount placed to the plaintiff's credit; that plaintiff bank never drew against the amount of the draft; that at no time was plaintiff bank indebted to the Commercial Bank; that it had been forwarded simply for collection and so entered on their books; and that plaintiff was the owner of the draft, and never parted with its title. Unless plaintiff's rights were lost or waived by virtue of the indorsements, or its agreement with the Commercial Bank, expressly or impliedly, the plaintiff, in our opinion, was entitled to recover. We attach no importance to the cancelled indorsement. The indorsement and cancellation were made by plaintiff before the transmission of the draft for collection. The unerased indorsements determined the legal relations of the parties. The indorsement by plaintiff, "Pay Commercial National Bank or order for account of People's Bank of Lewisburg," according to all the authorities, gave notice

that the paper was the property of the People's Bank, that it claimed the money due upon it, and that it was no longer negotiable paper. No one could purchase the instrument with this indorsement, and claim protection as an innocent purchaser against the true owner. Whosoever undertook to collect this paper thus indorsed, and whether acting as the agent of the owner, or the agent of the agent, knew that the money when collected, *ex equo et bono*, would belong to the owner of the paper. Any appropriation of it otherwise, without the consent of the owner, would be unauthorized. This we understand to be the distinction between the legal effect of a restricted indorsement, such as "for collection," or "on account of," and a general indorsement in blank, or "pay to," without restrictive words. When the defendant bank received the draft for collection and collected the money, it well knew, from the restricted indorsement, if there was no other agreement, that it belonged to the plaintiff, and not the Commercial Bank, and that the Commercial Bank had no title to it, nor any power to authorize the defendant bank to apply it or its proceeds to the payment of an indebtedness due it from the Commercial Bank. As between the owner and the collecting bank, the latter collected upon the terms and conditions expressed by the indorsement, irrespective of any understanding or agreement that may have existed between it and its principal, the agent of the owner. It could not acquire a right which its principal did not possess, and it knew its principal was a mere agent of the owner for collection. No person or corporation has any authority to apply money or property received and held by its debtor as agent or upon trust, with knowledge of the fact, in satisfaction of the debts of such agent. There is no question of an innocent purchaser for value in the case.

It is contended for appellee, that under the agreement and course of dealing between the plaintiff and its agent, the Commercial Bank of Nashville, as soon as the money was collected by the latter the relation of debtor and creditor arose and the ownership of the money vested in the Commercial Bank, and the collection of the money by the defendant and crediting it upon the indebtedness of the agent bank, was, in law, the transmission of the money to the agent bank, as much so as

if actually placed in its vaults, and had the effect to cre-
ate the relationship of debtor and creditor between
plaintiff and the Commercial Bank. The plaintiff by its
restricted indorsement gave notice to the Commercial
Bank and the defendant that the draft, or the money
when collected, belonged to it. No agreement between
the Commercial Bank and the defendant, or any method
of book-keeping, nor of keeping accounts current, could
divest the owner of its title to the draft or its proceeds.
There are statements in some opinions of courts of high
standing seemingly in conflict with our conclusion, but
an examination of the facts of these cases will show,
the principle of law applied is not applicable to the
present case. In the case of the *Commercial Bank of
Penn. v. Armstrong*, 148 U. S. 50, where the endorse-
ment was "for collection," Mr. Justice Brewer, deliver-
ing the opinion of the court, declared that, as to the
drafts which had been forwarded by the Fidelity Bank
for collection to its agent, and which were not collected
until after notice of its insolvency, the collecting bank
in making collections, acted as the agent of the owner
of the drafts, and not as the agent of the Fidelity Bank.
That as to drafts collected before the insolvency of the Fi-
delity Bank had been disclosed and which had been cred-
ited by the sub-agents upon the drafts of the Fidelity Bank
to them before notice of its insolvency, under the facts of
the case, the collecting bank or sub-agent was not liable
to the owner. The court agreed with the conclusions of
the trial court, which held that "the collection had been
fully completed," and that the credit to the Fidelity
Bank "was the same as though the money had actually
reached the vaults of the Fidelity Bank." The facts of
the case as stated in the opinion show that there was an
agreement between the plaintiff and the Fidelity Bank,
that the latter was to remit the first, eleventh and
twenty-first of each month. Collections intermediate
these dates, were by the custom of banks and the under-
standing of the parties, to be mingled with the general
funds of the Fidelity, and used in its business. By
the arrangement, as to intermediate collections,
the relation of debtor and creditor existed.
The Fidelity Bank became the owner
of the money and was a debtor to the plaintiff. We are
of opinion that the court based the conclusion, that the

sub-agent was not liable to the plaintiff upon the fact that the money, when collected and credited under the arrangement made with the plaintiff, was the money of the Fidelity and not the money of the plaintiff. It was the agreement between the plaintiff and its agent that remittances were to be made at stated periods only, and in the mean time the Fidelity Bank had the right to use the money in its business, which terminated the ownership of the plaintiff as soon as the money was collected by the Fidelity, and created the relationship of debtor and creditor. In discussing the question of collections by a sub-agent, before and after "avowed insolvency" of the principal agent the court was of opinion, that the fact of collection by a sub-agent, before notice of insolvency of its principal, was "not decisive" of its liability to the owner, and the decision was rested mainly upon the agreement between the owner and its agent, by which the relation of debtor and creditor was established between the days of remittances.

In the case of *White v. National Bank*, 102 U. S. 658, the indorsement was "Pay S. V. White or order for account of," &c. The court declared that the "Indorsement is without ambiguity, and needs no explanation, either by parol or resort to usage. The plain meaning of it is, that the acceptor of the draft is to pay it to the indorsee for the use of the indorser. The indorsee is to receive it on account of the indorser. It does not purport to transfer the title of the paper, or the ownership of the money when received. Both these remain, by the reasonable and almost necessary meaning of the language, in the indorser."

In the case of the *National Bank v. Hubbell*, 117 N. Y. 384, 396, the same distinction and rule is declared as held in 148 U. S., *supra*. The court says: "The firm, by the arrangement, had the right to retain the moneys and to remit weekly, and of course, from one week to another, it had the right to use the money, and the plaintiff relied upon the credit of the firm for such time as it had the right to retain the money."

In the case of the *Machanics Bank v. The Valley Packing Co.*, 70 Mo. 643, the endorsement was, "Pay to D. or order for collection for account of C." The court held, "that the restrictive indorsement destroyed the

negotiability of the bill, and operated as a mere authority to receive the proceeds for the use of the indorser.'' In the case of *Dorchester & Milton Bank v. New England Bank*, 1 Cush. (Mass.) 177, the distinction between an indorsement in blank and a restrictive indorsement is fully declared.—12 Amer. St. Rep. 598, 148 Mass. 553; *Freeman's Bank v. Nat. Tube Co.*, 21 Amer. St. Rep. 461, 151 Mass. 413.

We are of opinion the distinction is clear and the rule sound. Without it, ownership of the draft and money would be divested against the express contract of the indorsement, and without fault. The case of the *City Bank of Sherman v. Weiss*, 67 Texas 331, lays down the broad rule, that where a bank or person collects money upon a draft sent to it by the bank to whom it was indorsed for collection by the owner, with a restricted indorsement, the agent collecting the money holds it in trust for the owner, and has no authority to apply it to the payment of any indebtedness due from the forwarding bank, and that without reference to the question of notice of its insolvency. The agreement between the plaintiff in the case at bar and the Commercial Bank did not authorize the latter to use the plaintiff's money at any time in its business. As soon as collected, it was the duty of the Commercial Bank to notify the plaintiff of the collection and then plaintiff would draw it out. According to the facts of the case, the collection was never credited to plaintiff, and the Commercial Bank ceased to do business, and its agency terminated by insolvency before its contract with plaintiff was completed. We are of opinion under the facts of this case the plaintiff was entitled to recover, and judgment will be here rendered to that effect.

Reversed and rendered.