# Stone River National Bank *v.* Lerman Milling Company.

## *Garnishment in Aid of Assumpsit.*

(Decided June 27, 1913.   Rehearing denied November 11, 1913.
63 South. 776.)

1. *Banks and Banking; Collections; Agents and Correspondents.*— Where the drawer of a draft deposits it for collection in a bank located remotely from its place of payment, he authorizes such bank to employ another reputable bank located near the place of payment to collect it, and such collecting bank becomes the agent of the drawer, and the receiving bank is not liable unless the money comes actually into its hands.

2. *Same; Rights and Liabilities as to Proceeds.*—Where the drawer of a draft endorsed it to the bank when depositing it for collection, and the bank credited the drawer with the amount on his deposit account, the bank did not thereby become the purchaser of the draft, since its liability was not absolute, but conditioned upon the collection of the draft; hence, the proceeds of the draft in the hands of another bank to whom it was sent for collection, belonged to the drawer, for which he could maintain assumpsit, and as such was subject to garnishment by his creditor.

3. *Pleading; Claim Suit; Construction.*—Pleadings are to be construed most strongly against the pleader, and where a bank claiming as bona fide purchaser, the proceeds of the draft which had been garnisheed as the property of the drawer, alleged that it paid the defendant or drawer the purchase price by giving their account with claimant credit for the amount of the draft, the allegation will be construed to mean that the credit was given to the drawer as a depositor of the bank and not on a debt owed by the drawer to the bank.

Appeal from Limestone Circuit Court.

Heard before Hon. D. W. Speake.

Assumpsit by the Lerman Milling Company against J. R. Hale & Son, with garnishment to the Farmers & Merchants Bank of Athens, and claim by the Stones

[Stone River National Bank v. Lerman Milling Company.]

River National Bank to the funds garnished. There was judgment for plaintiff condemning the fund, and claimant appeals. Affirmed.

M. K. CLEMENTS, and SANDERS & THACH, for appellant. The law is declared by this court in the case of *Tishomingo Saving Inst. v. Johnson, Nesbitt & Co.,* 40 South. 503, settles this case and establishes claimant's right to recover the money. A bill of lading stands for and represents the goods therein receipted for during their transit, and until they are completely delivered to the person entitled thereto, but no longer.—*Amer. Nat. Bank v. Henderson,* 26 South. 498; 4 A. & E. Enc. of Law, 548.

WALL & RANKIN, and W. R. WALKER, for appellee. Mere delivery of the bill of lading without endorsements does not transfer title to the subject of the shipment.— *Zimmern's Coal Co. v. L. & N.,* 60 South. 598. The case of *Tishomingo S. Co. v. Johnson,* 40 South. 503, is distinguishable from the case at bar. "Where a bank collects a draft with b/l attached as agent for defendant, money can be attached by garnishing bank."—*Eufaula Gro. Co. v. Mo. Nat. Bk.,* 118 Ala. 408. "Where the facts of the pleading disclose that the legal effect of an instrument in writing is sought to be varied by parol evidence, a demurrer thereto will lie."—*Ala. Nat. Bk. v. Rivers,* 116 Ala. 1; *Sommerville v. Stephenson,* 3 Stewart, 271. "Where a check or draft is indorsed with 're-strictive' indorsement, collecting bank would have no right to apply the proceeds of draft to a debt of its principal (the bank to which draft was so indorsed), but it has notice that the proceeds are property of drawee."—*Williams, Deacon & Co. v. Jones,* 77 Ala. 294, 305; *Peoples Bank of Lewisburg, Tenn. v. Jef, Co.*

[Stone River National Bank v. Lerman Milling Company.]

*S. Bk.,* 106 Ala. 524; 54 Am. St. Rep. 59; *Old Nat. Bk. v. Bank,* 155 U. S. 556 (39 L. Ed. 259, 262) ; *U. S. Nat. Bk. v. Geer,* 41 L. R. A. 439. "Legal effect of written contracts cannot be varied by parol."—*Litchfield v. Falconer,* 2 Ala. 280, 284; *Somerville v. Stephenson,* 3 Stew. 271; *Dupuy v. Gray,* Minor, 357, 359. "Indorsements on negotiable paper cannot, unless ambiguous, be varied by parol."—*Peoples Bk. v. Jef. Co. S. Bk.,* 106 Ala. 524; *Tankersley v. Graham,* 8 Ala. 247, 250-251; *Litchfield v. Falconer,* 2 Ala. 280-286; *Ala. Nat. Bk. v. Rivers,* 116 Ala. 1, 13-14.

PELHAM, J.—When this case was first considered on the original submission, we were of the opinion that the holding of the Supreme Court in the case of *Tishomingo Sav. Inst. v. Johnson, Nesbitt & Co.,* 40 South. 503, was conclusive of the question that the trial court was in error in sustaining the plaintiff's demurrers to the claim propounded by the claimant in the instant case, and we reversed the judgment of the lower court on that authority. Upon consideration of the case on application for rehearing, we have reached a different conclusion, and have set out the reasons governing us in this determination, in stating what we deem to be correct principles of law applicable to the case at bar, and have distinguished this case from the case of *Tishomingo Sav. Inst. v. Johnson, Nesbitt & Co., supra,* and have withdrawn our former opinion. The case presented on the record before us shows that an attachment suit was brought in the trial court by Lerman Milling Company against J. R. Hale & Sons, to recover a debt alleged to be due by the latter to the former. The attachment was executed by serving a writ of garnishment upon the Farmers' & Merchants' Bank of Athens, who were supposed to be indebted to the defendants, J. R. Hale &

Sons. The garnishee answered, admitting an indebtedness of $197.99, setting out the facts as to how it originated substantially as follows: That on April 26, 1910, it received for collection, through the Stones River National Bank of Murfreesboro, Tenn., a bill of lading for a car of corn, with a draft attached, for $197.99, drawn April 25, 1910, on R. B. Wynne, Athens, Ala., by J. R. Hale & Sons, said defendants, payable to themselves, and bearing the following indorsement, to wit: "Pay to the order of Stones River National Bank, Murfreesboro, Tenn., for credit of account of J. R. Hale & Sons," which indorsement was signed by the drawers. That upon notice by the garnishee, the said R. B. Wynne, the person upon whom the draft was drawn, paid the amount of same to the garnishee, whereupon it delivered to him the said draft and the bill of lading for the car of corn, attached thereto; that while it, the garnishee, was still in possession of the money, and before it had remitted same to the Stones River National Bank of Murfreesboro, the said indorsee of the draft, from whom garnishee had received it for collection, the writ of garnishment in this case was served, and that it, the garnishee bank, had since been notified that the said Stones River National Bank claimed the said proceeds of the draft. Under the provisions of the statute (Code, § 4328 et seq.), the garnishee thereupon paid said proceeds into court, and the said Stones River National Bank was cited to propound in writing, under oath, its claim to said proceeds, as required by the statute, which was done. The facts set up therein as a basis for the claim are the same as those contained in the answer of the garnishee, which were hereinbefore detailed, with these additional, to wit: "That it, the claimant, was the purchaser of said draft, with bill of lading attached, for value and before maturity, and in the regular course

of business without notice of any claim to said draft by the said plaintiff, the Lerman Milling Company, or any other party, and before the attachment was sued out in this cause. That it deducted 10 cents from the face value of said draft for exchange at the time it was nego- tiated to it, and paid the defendants, the drawers, J. R. Hale & Sons, the balance of said draft 'by giving the account of J. R. Hale & Sons with claimant credit for said balance.' That at the time it purchased said draft, the following indorsement appeared on it: 'Pay to the order of Stones River National Bank, Murfreesboro, Tenn., for credit of J. R. Hale & Sons.' That it there- upon sent the draft, with the bill of lading attached, to the garnishee for collection, indorsing thereon the fol- lowing words: 'For collection and return to the Stones River National Bank of Murfreesboro.'" The statute (Code, § 4329) provides that the plaintiff must take issue upon the claim, either in law or fact.—*Diamond Rubber Co. v. Fourth Nat. Bank,* 171 Ala. 420, 55 South. 100. Here the plaintiff filed a demurrer to the claim as propounded, assigning numerous grounds. This de- murrer was sustained, and claimant appeals.

As we view the case, it is entirely immaterial whether or not the bill of lading, attached to the draft, was indorsed by defendants, J. R. Hale & Sons, to the claimants, since there is no litigation or dispute either about the title to the bill of lading or about the property represented by it. In fact, the plaintiff by the very act of suing out the writ of garnishment and endeavoring to reach the proceeds of the sale of the car of corn by de- fendants, J. R. Hale & Sons, to R. B. Wynne, the pur- chaser, upon whom the draft was drawn, and who paid it, admits a complete sale to Wynne and the validity and effectuality of the means employed to accomplish and perfect it. What the plaintiff is endeavoring to do

by the process of garnishment is to seize, before it reaches the hands of the defendant debtors, who were the sellers, the purchase price, or proceeds of the sale, of the car of corn, and subject it to the payment of its debt. As to whether it can do so or not depends upon whether or not the defendants, J. R. Hale & Sons, could maintain debt or indebitatus assumpsit against the garnishee for the funds here sought to be reached and subjected to defendants' debt.—*Cunningham v. Baker,* 104 Ala. 160, 16 South. 68, 53 Am. St. Rep. 27; *Roman v. Dimmick,* 123 Ala. 366, 26 South. 214. Plaintiff contends, in effect, that the garnishee would so be liable to defendants, upon the theory of fact that garnishee is but the agent of defendants in holding the funds. In the case of *Eufaula Grocery Co. v. Missouri National Bank,* 118 Ala. 412, 24 South. 390, our Supreme Court uses the following language, which is applicable to the question here under consideration as to whether or not the garnishee bank is the agent of the defendants, J. R. Hale & Sons, to wit: "It is a principle maintained by many of the courts [adopted in that case] that when the owner of a security deposits it, for collection, in a bank located remotely from the place of payment, he thereby gives the bank authority to employ another reputable bank, located at or near the place of payment, to make the collection; and, in such case, the collecting bank [as the garnishee bank is in this case] becomes the agent of the owner, and the receiving bank [as the claimant bank is in the present case] rests under no liability to the owner, unless and until the money comes actually to its hands."

Is this legal status of the respective parties to the transaction, with respect to each other, in any wise altered by reason of the fact that the owners of the security (the defendants in this case), at the time they de-

[Stone River National Bank v. Lerman Milling Company.]

posited it for collection with the receiving bank, the claimant, had passed to their credit on the bank's books the amount of the draft, less the exchange? This is the sole question, as we view the case, presented for review here, since the other questions are settled in *Eufaula Gro. Co. v. Missouri Nat. Bank, supra.* We are of opinion that such a circumstance as that recited does not change the fact that the collecting bank, the garnishee here, is the agent of the defendants, and that the proceeds of the draft, when coming into its hands in return for the bill of lading, representing the car of corn which defendants sold to the drawee, Wynne, are their property.—*Josiah Morris v. Ala. Carbon Co.,* 139 Ala. 620, 36 South. 764; *Eufaula Nat. Bank v. Missouri Nat. Bank, supra.* While in form the claimant bank assumed an absolute liability to the defendants by passing to their credit on the books of the bank the amount of the draft deposited with it, yet in fact it was only a conditional liability to be discharged by charging off the credit in the event the proceeds of the draft, when collected, did not (through no fault on the part of the claimant bank) actually reach its hands, and they were defendants' property until they did. If for any reason other than the fault of the claimant bank itself the funds should not actually reach it, then its liability to defendants for the amount it had entered to their credit terminated, and it could charge off said credit, sustaining no loss or detriment whatever.

In *Eufaula Gro. Co. v. Missouri Nat. Bank,* 118 Ala. pages 412, 413, 24 South. 389, it is held that, even if a collecting bank fails, after collecting the draft and before remitting to the receiving bank, the loss falls on the owner. So in this case, if the proceeds of the draft should be seized by process of law while in the hands of the collecting bank, the garnishee here, and subjected

to defendants' debts, no loss would fall on the claimant bank, since it could charge off the credit it allowed defendant on its books, which was merely a conditional liability assumed by it to defendants, conditioned to become absolute, as appears from the very nature of the transaction, only in the event the proceeds of the draft, when collected, actually reached its hands. Such assumption of a conditional liability does not render the claimant bank in fact a purchaser of the draft, though formally it might appear so.—*Ala. G. Co. v. Bank,* 158 Ala. 143, 48 South. 340, 132 Am. St. Rep. 18. It accepted the draft, merely as the agent of the defendants, for collection, granting them a credit to be charged off if the proceeds of the draft (through no fault of its own) did not actually reach it; and, when it employed the garnishee bank toward the end of collecting the draft, the garnishee bank became also the agent of defendants, and subject to garnishment while the funds remained in its hands—as much so as the claimant bank would itself be, after the funds had reached its hands. Certainly there can be no dispute but what, if the money had come into the hands of the claimant bank, it could have been garnished at any time before it paid the money to defendants or suffered them to draw it out on checks against the deposit with which they were credited at the time the draft was received for collection.

The claimant, as said, was not a purchaser of the draft, and had no interest whatever in it, since the liability it assumed by giving defendant credit for the face of it was conditional upon defendants' seeing that the proceeds, when collected, actually reached its hands. The case would be different if claimant bank had purchased the draft, which would have happened if it had at the time actually paid the defendants the cash, or other equivalent consideration, for it, or had, by agree-

[Stone River National Bank v. Lerman Milling Company.]

ment with defendants, credited the amount of it on a debt owed claimant by defendants. In any such case, the claimant would have been a purchaser of the draft, and could not rightfully be deprived of its proceeds by another creditor of defendants.

Here the allegations of the claim propounded by claimant bank are ambiguous, in that it does not clearly appear whether the claimant credited defendants with the amount of the draft as a payment or part payment of a book account defendants owed them, or merely credited it to them on the books as a depositor, and thereby assumed only a conditional liability to them, as such, for the amount of it. There is nowhere to be found an allegation that defendants, at the time of the credit, were in any way indebted to claimant. Pleadings are to be construed most strongly against the pleader; and, in the light of the attendant facts set forth in the claim here, we must construe the allegation to the effect that claimant paid the defendants the amount of the draft "by giving their account with claimant credit for the amount of it" as meaning merely that claimant assumed a liability to defendants, as depositors in its bank, by crediting them with the proceeds of the draft. Claimant's counsel in brief do not contend for any other construction, or that the facts are otherwise. So construed, it will be seen, from what we have said, that it is our conclusion that the claimant, not being a purchaser of the draft, but only a conditional debtor to defendants, is not entitled to recover, and that the court properly sustained the demurrer to his claim. The proceeds of the draft were the property of defendants, and could be garnished in the hands of their agent.—*Eufaula Gro. Co. v. Missouri Nat. Bank, supra.*

The case of *Tishomingo Savings Institution v. Johnson & Nesbitt,* 40 South. 503, cited and urged upon us

by appellant (claimant) as conclusive authority for his position here, does not seem to us, upon close analysis, to bear out appellant's contention. Conceding, as of course we do, that everything decided in that case is correctly decided, and that the legal principles laid down are sound, yet the principles there declared and the points there decided are distinguishable and not applicable to either the facts or the legal questions here involved. That was a claim suit, involving title to the property itself, five bales of cotton, which was levied on as the property of defendant, R. W. Carter, in a suit against him by Johnson, Nesbitt & Co., in which the Tishomingo Savings Institution interposed a claim to the property by making and filing necessary bond and affidavit. It appeared that before the suit was brought, or before the property was seized under the writ of attachment, the defendant, R. W. Carter, had parted with all right, title, and possession in and to the property by selling it to Smith & Coughlan, and had received the purchase price for it—though not in cash, yet in its equivalent, so far as that case was concerned—by accepting, in discharge of Smith & Coughlan's liability to him for such purchase price, credit, as a depositor, at the bank of Tishomingo Savings Institution. Clearly, therefore, Smith & Coughlan, the purchasers from Carter of the cotton, could have maintained a claim suit for it, when levied on by Carter's creditors under attachment; but the question in that case was: Could the Tishomingo Savings Institution, who advanced for Smith & Coughlan the money with which to pay Carter for the cotton, maintain such a suit? It was properly held that they could under the facts of that case, whereby it appeared that Merrill, as the purchasing agent of and for Smith & Coughlan, the purchasers, bought the cotton from Carter, the defendant, and ar-

ranged with Tishomingo Savings Institution to pay to
Carter for Smith & Coughlan the purchase price, which
they did by crediting Carter at their bank, as a deposi-
tor, for the amount—which was the same, so far as all
parties were there concerned, as if they had actually
paid Carter the cash. Whichever it be, it ended Carter's
interest, title in, and possession of the cotton, and put it
in Smith & Coughlan. What title or interest in the cot-
ton did Smith & Coughlan, through their agent Merrill,
confer on Tishomingo Savings Institution as the result
of the arrangement by him with them under which they
paid Carter for the cotton? He, Merrill, drew a draft
on his principals, Smith & Coughlan, for the purchase
price of the cotton, to which he attached a bill of lading
for it; he then indorsed the draft, delivering it and the
bill of lading to Tishomingo Savings Institution, in re-
turn for which they paid a third party, R. W. Carter,
the defendant, the amount of the draft by crediting him
with it. They were therefore the purchasers of the
draft, holding the bill of lading as security. If it had
been indorsed to them by Merrill, the agent of Smith &
Coughlan, then they would have had the legal title
thereto, upon which they could have maintained, not
only a claim suit for the cotton, as in that case, but also
trover or detinue in other contingencies, as pointed out
in the opinion, which also held that, even if Merrill did
not indorse the bill of lading, still Tishomingo Savings
Institution had such a right or lien as was sufficient to
support a claim suit; because, we may add, a mere lien,
either legal or equitable, if paramount to plaintiff's
right, will, under the statute, in a case of trial of right
of property, support a claim to the property.—Code,
§ 6039. It was therefore the conclusion that in either
event, whether the bill of lading was indorsed or not in-
dorsed, the claimant could well maintain that suit.
Likewise the claimant in that suit could, under the facts
there appearing, have maintained a claim for the pro-
ceeds of the draft, if it had been paid and the proceeds

[Stone River National Bank v. Lerman Milling Company.]

had been garnished while in the hands of a collecting bank, because the claimant there, Tishomingo Savings Institution, was the owner of the draft, and as a consequence the owner of its proceeds when collected, having purchased it from Smith & Coughlan's agent, Merrill, by assuming an absolute and unconditional liability to a third party, the defendant, Carter, by crediting him at the bank with the amount of it. Whether the draft was ever collected or not would not alter or change the liability of Tishomingo Savings Institution to Carter on that deposit. So here, if the claimant, by agreement with defendants, had placed the amount of the draft to the credit of a third person in payment of a debt defendants owed such third person, the case would be different, and claimant would have been a purchaser of the draft and could successfully have claimed its proceeds when collected—whether the bill of lading, attached to and delivered as security for the draft, was indorsed or not. In such case it, and the garnishee here, would still have been the agent of defendants to deliver the bill of lading to the purchaser, upon his payment of the draft, and thereby to complete the sale, but the claimant would have been agent with an interest in or rather right to the proceeds of the sale, which it had previously advanced, and of which it could not be deprived.

The application for rehearing is granted, the original opinion is withdrawn, the former judgment of reversal set aside, and the judgment of the lower court is affirmed.

Affirmed.