(84 South. 427)

FARMERS' EXCHANGE BANK v. GREIL BROS. CO. (3 Div. 349.)*

(Court of Appeals of Alabama. Nov. 11, 1919. Rehearing Denied Dec. 16, 1919.)

1. APPEAL AND ERROR ⟨key⟩1008(1, 3)—WHERE EVIDENCE IS DOCUMENTARY OR WITHOUT DISPUTE, FINDINGS OF TRIAL COURT NOT CONCLUSIVE.

While the appellate court will not reverse the findings of fact by the trial court in an action heard without a jury where the evidence is given ore tenus unless clearly convinced that it is wrong or unjust, the rule has no application where the evidence is documentary or without practical dispute.

2. CARRIERS ⟨key⟩58 — BANK DISCOUNTING DRAFTS ATTACHED TO BILL OF LADING DOES NOT LOSE SPECIAL PROPERTY BECAUSE ONE OF DRAWEES REFUSED TO PAY.

Where a carload of seed corn was sold to three purchasers at the same point, and bill of lading, with three drafts attached, one on each of the purchasers, was indorsed to a bank which discounted the drafts, the bank's special property was not divested, where on refusal of one of the purchasers to accept the corn the seller made settlement with the purchaser refusing to accept, drew a draft for a less amount, and paid the bank the difference, it being understood, in event the drafts were not paid, the seller should reimburse the bank; hence a creditor of the seller could not attach the fund in the hands of the bank.

3. PAYMENT ⟨key⟩16(1) — ACCEPTANCE OF A CHECK OR DRAFT IS NOT A DISCHARGE UNLESS SO INTENDED.

The acceptance of a check or draft is not a discharge of an obligation unless it is so intended by the parties.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Action by the Greil Bros. Company, a corporation, against the Belcer Grocery Company, in which a fund garnisheed was claimed by the Farmers' Exchange Bank, a corporation. From a judgment in favor of the attaching creditor, claimant appeals. Reversed and rendered.

Rushton, Williams & Crenshaw, of Montgomery, for appellant.

The bank was a holder for value. 8 Corpus Juris, 483; 189 Ala. 418, 66 South. 509; 185 Ala. 249, 64 South. 561; 158 Ala. 143,

---

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Certiorari denied 203 Ala. 697, 84 South. 924.

48 South. 340; 9 Ala. App. 352, 63 South. 741. Under the facts in this case, the title to the proceeds was absolute in the bank. 16 Ala. App. 346, 77 South. 940; 191 Ala. 663; 12 Ala. App. 514, 67 South. 721; 9 Ala. App. 328, 63 South. 776. The bank was a holder in due course. 191 Ala. 356, 67 South. 839; 7 Corpus Juris, 635; 101 Neb. 96, 162 N. W. 503, L. R. A. 1917E, 374.

Steiner, Crum & Weil, of Montgomery, for appellee.

The only issue arising was whether claimant had a superior right to the garnishing creditor and the burden was on the claimant. 171 Ala. 420, 55 South. 100, 129 Ala. 314, 29 South. 680; 57 Ala. 368; 11 Ala. 151. Until excepted a bill of exchange does not operate as an assignment of the funds in the hands of the drawee. Section 5076, Code 1907; 27 Ala. 399; 102 Ala. 537, 14 South. 871; 11 Ala. App. 563, 66 South. 839; 134 Ala. 626, 33 South. 6; 129 Ala. 326, 29 South. 695; 16 Ala. App. 256, 76 South. 988; 158 Ala. 143, 48 South. 340; 180 N. Y. 346, 73 N. E. 33, 105 Am. St. Rep. 767; 185 Ala. 256, 64 South. 561; 195 Ala. 175, 70 South. 725; 145 Ala. 625, 40 South. 278.

SAMFORD, J. One Richardson, acting as the agent of Bramham Grain Company, located at Union City, Tenn., and engaged in the wholesale grain business, contracted to sell to Greil Bros. Grocery Company, Winter-Loeb Grocery Company, and Belcer Grocery Company, all of Montgomery, Ala., a carload of seed corn. In accordance with that contract, on March 16, 1918, Bramham Grain Company, shipped a carload of seed corn to Montgomery to its own order, "Notify Greil Bros., Montgomery, Alabama."

Thereupon Bramham Grain Company drew three drafts for $592.82, $59.28, and $1,682.87 upon Winter-Loeb Grocery Company, Belcer Grocery Company, and Greil Bros. Company, respectively, which said drafts aggregated the purchase price of the said carload of corn, attached these drafts to the bill of lading, indorsed the bill of lading to the Farmers' Exchange Bank, the claimant here, whereupon the proceeds of the three drafts were placed to the credit of the Bramham Grain Company with the Farmers' Exchange Bank, and subsequently checked out by it in the payment of its various obligations.

The three drafts, thus indorsed, with the bill of lading attached, were sent by the Farmers' Exchange Bank to the First National Bank of Montgomery for collection and return. The drafts on Greil Bros. Company and Belcer Grocery Company were paid, and thereupon the Montgomery Bank delivered the bill of lading, covering the entire carload of corn, to Greil Bros. Company; the draft of Winter-Loeb Grocery Company for $592.82 remaining unpaid.

Greil Bros. Company unloaded and received the portion of the contents of the car intended for it. The Winter-Loeb Grocery Company took its part of the corn from the car, but complained that the corn did not come up to sample, and refused to accept it or to pay the draft. After some negotiations with the agent of the Bramham Company, extending over several weeks, the Winter-Loeb Grocery Company agreed to pay for the corn at the reduced price of $430.30, being an allowance agreed to be made by the Bramham Company, amounting to $162.50, in accordance with a letter written by the Bramham Company to Winter-Loeb & Co., under date of April 17, 1918.

On April 17th, the Bramham Company paid the Farmers' Exchange Bank $162.50, delivered a draft drawn by it on the Winter-Loeb Grocery Company of Montgomery, Ala., to the order of the Farmers' Exchange Bank for $430.30. On the same day, April 17th, the sheriff served a writ of garnishment upon Winter-Loeb Grocery Company at the suit of Greil Bros. Company, against Bramham Grain Company.

There was no special arrangement between the Bramham Company and the Farmers' Exchange Bank regarding the drawing of drafts by the grain company on its customers, the bank discounting its drafts in the usual way for grain dealers. It was understood, however, that in the event a customer of the grain company failed to pay a draft, which had been discounted by the bank, the bank would call upon the grain dealer to make the amount good.

The case was tried by the court without a jury under an agreement of counsel that the circuit court would hear all the testimony and decide the issues of law and fact and render a judgment for the party shown by the testimony and pleadings to be entitled to the funds in controversy.

[1] While the rule is that on evidence given ore tenus the Appellate Court will not reverse the finding of the trial court, unless clearly convinced that it is wrong and unjust, yet, where the evidence is documentary or without practical dispute, this rule is without application. Hackett v. Cash, 196 Ala. 403, 72 South. 52; Owensboro Banking Co. v. Buck, 16 Ala. App. 346, 77 South. 940.

[2, 3] It will be seen that the only practical points of difference between the instant case and the other adjudications in this jurisdiction bearing on the rights of holders of bills of lading acquired in due course of business, where the goods represented by the bills of lading have been shipped "To order notify," is in the fact that three drafts were drawn, representing the whole price of the shipment, and after the shipment had reached destination there was an adjustment in price between the original shipper and one of the purchasers. Owensboro Banking Co.

v. Buck, 77 South. 940,[1] and authorities there cited. The fact that three drafts were drawn instead of one certainly could not have the effect of changing the rule as to the transfer of title in and to the goods themselves. Therefore the three drafts having been indorsed and transferred to the Farmers' Exchange Bank, who discounted them, with the bill of lading attached, the proceeds being placed to the credit of the grain company, who afterwards checked out the proceeds of the drafts in payment of its other obligations, a special property in the goods passed to the Farmers' Exchange Bank, subject to be divested by the acceptance of the goods and payment of the drafts. Owensboro Banking Co. v. Buck, supra; Hood v. Commercial Germania Co., 12 Ala. App. 514, 67 South. 721; Stone River Bank v. Lerman Milling Co., 9 Ala. App. 328, 63 South. 776; Darrah Lumber Co. v. McGowin Lumber Co., ante, p. 256, 84 South. 421.

The Winter-Loeb Grocery Company did not pay the original draft representing the part of the car of corn allotted to it. This fact in itself did not have the effect of divesting the special interest in the corn out of the bank. On the contrary, if the matter had rested at that point, the bank would have been the complete owner. But the grain company was under obligation to the bank, by way of a guarantor, that the draft represented the true value of the goods described in the bill of lading, and when the grain company paid the $162.50 and substituted a draft for a smaller amount on Winter-Loeb Grocery Company, as representing the value of the goods, the title of the bank was not divested until the substituted draft was paid. It is familiar law that the acceptance of a check or draft is not the discharge of an obligation, unless it is so intended by the parties. The court erred in rendering judgment for the plaintiff. The judgment should have been for the claimant.

The judgment is reversed, and a judgment is here rendered for the claimant.

Reversed and rendered.