(89 South. 66)

ALEXANDER v. BIRMINGHAM TRUST & SAVINGS CO. (6 Div. 86.)

(Supreme Court of Alabama. May 12, 1921.)

1. **Banks and banking** ⬥159 — Proceeds of draft in hands of correspondent bank held to belong to defendant, and subject to garnishment.

Where a flour milling company sold flour and forwarded a bill of lading with draft attached to the F. bank, which bank immediately on receipt of the draft credited the seller with the amount thereof, and issued to it a deposit slip stipulating that it assumed no responsibility for the collection, and that checks on the fund would be credited conditionally, and the F. bank forwarded the bill of lading and draft to the B. bank, which bank collected the draft, the proceeds of the draft remained the property of the flour milling corporation, and were subject to garnishment in an action against it.

2. **Garnishment** ⬥95—Garnishee held charged with notice that proceeds of a bill of lading and draft attached belonged to the defendant in the garnishment action.

A bill of lading with draft attached contained an invoice showing that the amount of the draft was for the purchase price of flour sold by defendant. The bill of lading and draft were forwarded by the seller to the F. bank, which in turn forwarded it to the B. bank for collec-

tion. Across the face of the draft was written in large letters, "Present through B. bank," thus indicating that the drawer of the draft reserved control over the collection. The B. bank a few hours before collection of the draft, but while the draft was in its possession, was served with garnishment process, in an action against the seller, and such process was again served on the B. bank about an hour after it had remitted the proceeds as directed. *Held*, that the B. bank was charged with notice that defendant in the garnishment action was the owner of the proceeds, and it was liable as garnishee for the amount thereof, though it had received the bill of lading and draft from another bank, instead of directly from the defendant.

Appeal from Circuit Court, Jefferson County; Romain Boyd, Judge.

Action by F. G. Alexander against the Fisher Flour Milling Company, with garnishment in aid of suit to the Birmingham Trust & Savings Company. From a judgment discharging the garnishee, the plaintiff appeals. Reversed and remanded.

The following is the certificate of deposit:

Deposited in the First National Bank, Subject to Conditions Below, by Fisher Flouring Mills Co. Seattle, Wash., March 15, 1917.

Specify banks upon which checks are drawn.

| | Dollars. | Cents. |
|---|---|---|
| Gold coin | | |
| Currency | | |
| Silver | | |
| Checks on | | |
| Dft. 1778. G. W. Hopson & Son, Birmingham, Ala. | 2633 | 84 |

In receiving checks or other items on deposit payable elsewhere than in Seattle, this bank assumes no reponsibility for the failure of any of its direct or indirect collecting agents, and shall only be held liable when proceeds in actual funds or solvent credits shall have come into its possession. Under these conditions items previously credited may be charged back to the depositor's account. Checks on this bank will be credited conditionally. If not found good at the close of business they will be charged back to the depositors and the latter notified of the fact. In making this deposit, the depositor hereby assents to the foregoing conditions.

Rudulph & Smith, of Birmingham, for appellant.

Brief was misplaced and did not reach the Reporter.

Shuford B. Smyer, of Birmingham, for appellee.

The proceeds of the draft were the property of the National Bank of Seattle and not subject to garnishment. 17 Ala. App. 287, 84 South. 427; 106 Ala. 524, 17 South. 728, 54 Am. St. Rep. 59. If the draft was drawn by the defendant and remained the property of the defendant, the Birmingham bank having no notice of such ownership was protected in paying over the proceeds thereof to the payee of the draft, and can set up such payment as a defense. 118 Ala.

408, 24 South. 389; 153 Ala. 602, 44 South. 1026; 6 How. 212, 12 L. Ed. 409; 4 Cyc. 335; 3 R. C. L. 636.

GARDNER, J. Appellant sued out an attachment against the Fisher Flouring Mills Company (hereinafter referred to as the Fisher Company), a nonresident corporation, and had the same executed by service of garnishment upon the Birmingham Trust & Savings Company, and sought to subject to the satisfaction of his claim the proceeds of a certain draft drawn by said Fisher Company on Hopson & Sons, payable to the First National Bank of Seattle. The draft so drawn was for the purchase price of a car of flour sold by the Fisher Company to Hopson & Son, to be shipped to Macon, Ga., and was deposited by the former in said First National Bank, with bill of lading attached. The First National Bank forwarded the draft, with bill of lading attached, to the Birmingham Trust & Savings Company for collection. The bill of lading shows the flour was consigned by the Fisher Company to itself, with order "Notify Hopson & Son," and the draft was payable upon arrival of the car at Macon, Ga.

[1] The first question presented for consideration is whether or not the defendant Fisher Flouring Mills Company, under the evidence in this case, could have maintained debt or indebitatus assumpsit against the Birmingham Trust & Savings Company for the funds here sought to be subjected. This, is the test.

A detailed discussion of the evidence is deemed unnecessary, as a sufficient outline thereof, will appear in the statement of the case. Suffice it to say it very clearly appears, and that—as we understand it—practically without dispute, that the draft in question was made payable to the First National Bank for the purpose of collection on account of the drawer. Indeed, there is no pretense that said bank became the purchaser of the draft. The Fisher Company was its customer, and while, upon presentation of the draft with bill of lading attached to said bank, credit was given to the Fisher Company for the amount thereof, yet this was made expressly conditional by the contract of the parties, as appears from the deposit slip set out in the report of the case. This deposit slip expressly stated that the bank assumes no responsibility on account of any of its collecting agents, it only being liable for the proceeds or actual funds of solvent credits which have come into its possession, and that under these conditions the items previously credited may be charged back to the depositor's account, and any checks of payment to be credited conditionally.

So far as the question here concerned is involved, we consider the case of Stones River National Bank v. Lerman Milling Co.,

9 Ala. App. 322, 63 South. 776, reviewed and approved by this Court in Ex parte Stones River National Bk., 185 Ala. 673, 64 South. 1019, is decisive of this appeal. The holding in that case (9 Ala. App. 322, 63 South. 776), is well expressed in the second headnote as follows:

"Where the drawer of a draft indorsed it to the bank when depositing it for collection, and the bank credited the drawer with the amount on his deposit account, the bank did not thereby become the purchaser of the draft, since its liability was not absolute, but conditioned upon the collection of the draft; hence, the proceeds of the draft in the hands of another bank, to whom it was sent for collection, belonged to the drawer, for which he could maintain assumpsit, and as such was subject to garnishment by his creditor."

The opinion quotes from the case of Eufaula Grocery Co. v. Mo. Nat. Bk., 118 Ala. 408, 24 South. 389, and likewise distinguishes Tishomingo Savs. Inst. v. Johnson & Nesbitt, 146 Ala. 691, 40 South. 503, 119 Am. St. Rep. 34.[1]

In the Stones River National Bank Case, supra, the claimant bank occupied the position of the First National Bank in the instant case, and the draft had been forwarded to the Farmers' and Merchants' Bank for collection, as in this case it had been forwarded to the Birmingham Trust & Savings Bank. Likewise it appears that the deposit was conditional, as here, and it was held that such an assumption of a conditional liability did not render the claimant bank in fact a purchaser of the draft, though formally it might appear so. As pointed out in the opinion the case would have been different had the claimant bank actually purchased the draft, or had by agreement credited the amount of it on a debt owed the claimant by the defendants.

The deposit was conditional, with no pretense of purchase, and the mere fact that the drawer of the draft was at the time indebted to the First National Bank in an amount in excess thereof could have no material bearing upon the result in the absence of any agreement or understanding of any credit to be given on account thereof or any pretense on the part of the bank that such credit was to be given or expected. Indeed, the language used on the deposit slip clearly indicates to the contrary. The First National Bank therefore was but the agent of the Fisher Company in the collection of the draft. Stones River Nat. Bk. v. Lerman, supra; People's Bk. of Lewisburg v. Jefferson County Savs. Bk., 106 Ala. 524, 17 South. 728, 54 Am. St. Rep. 59; Eufaula Gro. Co. v. Mo. Nat. Bk., supra; Cosmos Cotton Co. v. First Nat. Bk., 171 Ala. 392, 54 South. 621, 32 L. R. A. (N. S.) 1173, Ann. Cas. 1913B, 42; Cotton Mills v. Weil, 129 N. C. 452, 40 S. E. 218; Washington Brick Co. v. Traders' Nat. Bk., 46 Wash. 23, 89 Pac. 157, 123 Am. St. Rep. 912.

We have considered the case of Farmers' Ex. Bk. v. Greil Bros., 17 Ala. App. 287, 84 South. 427, cited by counsel for appellees, reviewed by this court in Farmers' Mut. Ins. Ass'n v. Smith, 203 Ala. 697, 84 South. 924, and do not find that authority to militate against the conclusion here reached. Therefore, although upon its face it might appear that the First National Bank held the legal title to the draft, yet upon the undisputed proof the Fisher Company remained the beneficial owner thereof, and could have maintained an action of debt for the recovery of the proceeds. Josiah Morris & Co. v. Ala. Carbon Co., 139 Ala. 620, 36 South. 764.

[2] Indeed, we entertain no doubt, as stated by counsel in brief, that the trial court so concluded upon these facts, but his judgment discharging the garnishee was rested upon the theory that it had paid out the money without sufficient notice that the Fisher Company had any claim thereto. We cannot agree to this conclusion from the evidence here presented. Two writs of garnishment were served on this bank on April 7, 1917, in this identical cause, the first at 8:55 o'clock in the morning, and the other during the afternoon of the same day—both being served on the assistant cashier. At the time the first writ was served the draft had not been collected, but was collected within two or three hours thereafter. At the time of the service of the second writ, the collection had been made, and the proceeds forwarded to the National Park Bank, New York, for the credit of the First National Bank of Seattle, pursuant to instructions, but so forwarded by check placed in the mail, and only a very short time prior to this second writ. The Birmingham bank had this draft in its possession several days prior to the service of the garnishment writ. It was drawn by Fisher Flouring Mills Company, and, while it was payable to the First National Bank, it was only payable on the arrival of the car of flour at Macon, Ga. Attached to the draft was an invoice and a bill of lading for the car of flour, shipped by the Fisher Company to itself, with order "Notify Hopson & Son," the drawee. Across the face of the draft was written in large underscored letters, "Present through Birmingham Trust and Savings Bank, Birmingham, Alabama," thus seemingly indicating that the drawer reserved some control or direction over the manner of its collection.

The name of the drawer suggested that it was in the flour business, and the garnishee bank must of course be held to know that one of the most important functions of a bank is to make collections for its customers. The draft, as previously stated, was payable only upon the arrival of the car of flour

---

[1] Reported in full in the Southern Reporter; reported as a memorandum decision without opinion in the Alabama Reports.

at Macon, Ga., shipped from the distant state of Washington. The garnishee, upon being served with the first writ, must have been put upon notice thereby that the plaintiff at least was insisting that the proceeds belonged to the Fisher Company, and that the issuance of the writ was not merely an idle ceremony. But the bank did nothing more than to merely file on the same day a general answer denying indebtedness. Another writ was served between 3 and 4 o'clock of that same day, and the evidence of the assistant cashier would indicate that he understood the purpose of the writ; for when asked as to the time of its service, he replied that there was "a notation on the garnishment writ that it was mailed that afternoon between 3 and 4 p. m." Notwithstanding the service of the two writs, no inquiry whatever was made by the bank; and, notwithstanding the fact that a check for the proceeds had doubtless less than an hour previously been placed in the mail, yet no effort was made to intercept the mail, or stop the payment of the check, which no doubt could easily have been done. As said by this court in White v. Simpson, 107 Ala. 386, 18 South. 151:

"The service of a garnishment creates a lien on the debt or demand due or owing from the garnishee, a lien which is inchoate, but is incapable of impairment by any arrangement or transaction between the defendant and the garnishee, or by any act of either."

And again, in Ely v. Blacker, 112 Ala. 311, 20 South. 570:

"In legal contemplation, the garnishee stands indifferent between the plaintiff in judgment and the defendant. It is nothing to him whether the one or the other is entitled to the fund in his hands. His only concern is to pay it to that one who shall be adjudged entitled to it. He has no right to intercept or intervene in any way in the contest between them, but he must stand still until that contest is determined between them alone, and then pay to the successful party. If, instead of this plain and safe course, he pays to either party before the contest is decided, he does so at his own risk and in his own wrong."

We are of the opinion the facts and circumstances indicate sufficient notice to the Birmingham Trust & Savings Company to place it on inquiry as to the ownership of the proceeds of this draft, and that ordinary prudence required that they should hold the same subject to the court proceedings, and suggesting the First National Bank as claimant thereof. The garnishee stands indifferent and this was the plain and safe course they should have pursued. Disregard of the garnishment writs was its own wrong, and at its own risk.

The conclusion is reached that the court below erred in discharging the garnishee,

but should have held that the contention of the plaintiff was sustained, and, after determining the amount of liability of the garnishee, continued the garnishment, ordering that the funds await the result of the principal suit. Warren v. Matthews, 96 Ala. 183, 11 South. 285.

The judgment will be reversed, and the cause remanded, to be proceeded with in accordance with these views.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.