Argued January 29, decided February 10, 1914.

# SECURITY SAVINGS & TRUST CO. *v.* KING.

### (138 Pac. 465.)

**Banks and Banking—Functions and Dealings—Deposits for Collection.**

1. Where a check or other negotiable paper is deposited with a bank for collection, the relation of principal and agent is created between the depositor and the bank.

[As to liabilities of banks acting as collecting agencies, see note in 77 Am. St. Rep. 613.]

**Banks and Banking—Functions and Dealings—Deposits for Collection.**

2. As a general rule, after a bank effects a collection of a check, it becomes a simple contract debtor for the amount, less the commission charged.

**Banks and Banking—Functions and Dealings—Deposits for Collection —"Proceeds in Actual Funds."**

3. Where a bank receives a check for collection under an agreement that it shall only be liable when proceeds in actual funds or solvent credits shall have come into its possession, and it is certified by mistake by the drawee, and a draft remitted to the bank by its correspondent, but payment on the draft was stopped and the payee notified before it reached the bank, the bank was not chargeable with the amount of the check in favor of the depositor; "proceeds in actual funds" meaning the real funds inuring from a collection, or negotiable paper free from embarrassment and convertible into cash.

**Banks and Banking—Functions and Dealings—Certified Checks.**

4. Where a bank certifies a check by mistake, it may correct it by immediately notifying the holder, before the check has passed to a *bona fide* holder.

**Banks and Banking—Functions and Dealings—Deposits.**

5. The mere fact that a bank credited to a depositor as cash a check he had left for collection does not render it liable for the amount, where the check was subsequently dishonored.

**Banks and Banking—Functions and Dealings—Payments by Mistake.**

6. Money paid by a bank to the owner of paper deposited for collection under mistake of fact may be recovered, though there was negligence in making the payment, if the position of the person to whom the payment was made has not thereby been changed to his prejudice.

[As to right of bank to recover money paid by mistake, see note in Ann. Cas. 1912D, 494.]

From Multnomah: Robert G. Morrow, Judge.

This is an action by the Security Savings & Trust Company against Charles B. King. Plaintiff being dissatisfied with the judgment rendered in the lower

court in favor of defendant, prosecutes this appeal. The facts are set forth in the opinion of the court.

REVERSED AND JUDGMENT RENDERED.

For appellant there was a brief over the names of *Messrs. Dolph, Mallory, Simon & Gearin* and *Mr. Hall S. Lusk,* with an oral argument by *Mr. Joseph Simon.*

For respondent there was a brief and an oral argument by *Mr. John B. Cleland.*

Department 2.   MR. JUSTICE MCNARY delivered the opinion of the court.

Asserting that defendant overdrew his account on deposit to the amount of $394.63, plaintiff brings this action to recover judgment for a corresponding sum with interest.   On September 27, 1911, defendant deposited with plaintiff for collection a check drawn by one H. O. Dempster on the Imperial Bank of Canada, Vancouver, B. C., payable to cash for $585, upon the following conditions thereon indorsed: "In receiving checks, drafts or other paper on deposit payable elsewhere than in Portland this bank assumes no liability for the failure of any of its direct or indirect collecting agents whether the collecting agent be the person or concern on which the check for collection is drawn or not, and shall only be held liable when proceeds in actual funds or solvent credits shall have come into its possession.   Under these provisions items previously credited may be charged back to the depositor's account.   In making this deposit the depositor hereby assents to the foregoing conditions."   Concurrently, defendant deposited $144.35 which, together with the check, was credited to the account of defendant.   On the same day Dempster notified the Imperial Bank of Canada not to pay the check, employing the following words:

"I find it imperative for me to ask you to cancel check to cash indorsed by Charles King, for which value has not been received to the extent of $585, and on which I am making other arrangements with Mr. King. This check is to be deposited at the City of Portland, and herewith I will assume all responsibility of the same, or any actions, etc.

Upon the deposit of the check, plaintiff immediately forwarded the check to the Northern Crown Bank, its correspondent at Vancouver, B. C., which institution, upon receipt of the check and in the forenoon of September 30, 1911, presented it to the Imperial Bank of Canada for payment. At the time the check was presented, the latter bank by the proper officer certified and returned the check to the Northern Crown Bank, and charged the account to the drawer, forgetting that payment had been stopped. The Northern Crown Bank, upon receipt of the certified check, charged the account to the Imperial Bank and remitted to plaintiff out of its own funds the amount of the check. In the evening of September 30, 1911, the Imperial Bank of Canada discovered the error it had committed in overlooking the stop order and certifying the check, and immediately notified the Northern Crown Bank of the true situation; the notice being received, however, after remittance had been made to plaintiff. Thereupon the Northern Crown Bank telegraphed plaintiff the following message:

"Item $585, in your list Sept. 27, unpaid and remitted for by us today in error by our New York Draft 1 No. 13931. Shall we protest, wire prompt. The Northern Crown Bank."

This intelligence was received by plaintiff on October 1, 1911. On the day of the receipt of this information, plaintiff exhibited to defendant the contents of the telegram; whereupon defendant left for Vancouver, B. C., from which point on October 4th defendant telegraphed plaintiff in substance that, if it would return

the check to him, he would make collection. Failing in this, defendant subsequently returned the check to plaintiff. During the intervention of time from September 27, 1911, to October 4, 1911, defendant drew checks upon the plaintiff amounting to $539.55, and which were paid by plaintiff. On October 4, 1911, the day the draft arrived, plaintiff remitted to the Northern Crown Bank the amount of the check. In his answer defendant alleged that, of the sums of money deposited by him with appellant, $190.37 is unlawfully withheld, and sought judgment therefor, which the trial court entered in his behalf.

1. The rule is well established that, where a check or other negotiable paper is deposited with a bank for the purpose of collection, the relation of principal and agent is thereby created between the depositor and the bank: *National Revere Bank* v. *National Bank,* 172 N. Y. 102 (64 N. E. 799) ; *Midland Nat. Bank* v. *Brightwell,* 148 Mo. 358 (49 S. W. 994, 71 Am. St. Rep. 608) ; *Jefferson County Savings Bank* v. *Hendrix,* 147 Ala. 670 (39 South. 295, 1 L. R. A. (N. S.) 246) ; 2 Michie, Banks and Banking, § 156.

2. Counsel for defendant argues, and we think correctly, that, as a general rule, after a bank effects the collection of a check, intrusted to it for that purpose, it becomes a simple contract debtor for the amount, less any commission which may be charged: 1 Morse, Banks and Banking (3 ed.), § 248; *Jockusch* v. *Lowsey,* 51 Tex. 129.

3. In a consideration of this case, the mind must keep before it the terms of the contract had between plaintiff and defendant, as their contractual relations were not left to custom or general rules, but were founded upon an express contract which provided that plaintiff ''should only be held liable when proceeds in actual funds or solvent credits shall have come into its possession.''

The unquestioned testimony shows that plaintiff was notified of the erroneous remittance of the money by draft four days before its receipt; that at a time practically synchronous defendant was also apprised by plaintiff of the erroneous transmission of the draft, and forthwith left for Vancouver, B. C., to consult H. O. Dempster, the drawer of the check. Defendant in response to a question calculated to disclose when he telegraphed for the check said:

"A. It was on Wednesday, the 4th, as I remember it.

"Q. Of October?

"A. Yes, sir.

"Q. What did you say in your telegram?

"A. As near as I can remember, to the effect that, if he [the cashier of the bank] would return the check to me, I would make collection.

"Q. Did he return the check?

"A. He returned the check.

"Q. Did you attempt to collect it?

"A. I attempted to make the collection and discovered it had been certified in error. The information was imparted to me; he informed me he had consulted a lawyer.

"Q. Who was that—Dempster?

"A. Yes, sir.

"Q. Did he say he found it had been certified in error?

"A. Oh, now, he didn't tell me anything about it. I got the check and saw it myself."

As a matter of law, we think it is clear that the plaintiff did not come into possession of the proceeds of the check as contemplated by the contract, as it only received the draft which was not convertible into actual funds for the reason payment thereof had been stopped prior to its receipt by plaintiff. In the agreement defining the relation of the parties, no liability attached to plaintiff until the proceeds in actual funds should come into its possession. Proceeds in actual funds mean the real funds inuring from a collection of the

check or negotiable paper free from embarrassment and convertible into cash.

4. Where a bank certifies a check by mistake, it may correct the same by immediately notifying the holder, and before the check has passed from his hands to a *bona fide* owner: Magee, Banks and Banking (2 ed.), p. 327; *Carley* v. *Potter's Bank* (Tenn. Ch. App.), 46 S. W. 328. So in the case before us, the Imperial Bank was within the law when it declared its certification of the check erroneous; likewise the Northern Crown Bank in receiving the draft and plaintiff in returning the same after proper notice, in view of the fact that defendant's position had not been altered to his injury, or the right of third parties intervened.

5. The mere fact that plaintiff credited to defendant as cash the check he left for collection does not render plaintiff liable to defendant for the amount of the check, inasmuch as the check was subsequently dishonored: *Winchester Milling Co.* v. *Bank,* 120 Tenn. 225 (111 S. W. 248, 18 L. R. A. (N. S.) 441); 2 Michie, Banks and Banking, § 163.

6. The rule of this state permits the recovery of money paid under the stress of ignorance of surrounding facts. As an illustrative case, see *Scott* v. *Ford,* 52 Or. 288 (97 Pac. 99). And in case of payment by a bank to the owner of paper deposited with it for collection the same rule applies, so that money paid under a mistake of fact may be recovered, although there was negligence on the part of the bank in remitting the payment, subject to the condition that payment cannot be realized if the position of the person to whom the payment had been made has been changed to his prejudice toward his debtor in consequence of the payment: 2 Michie, Banks and Banking, § 169.

Under the state of the record, and especially in view of the written contract had between plaintiff and defendant with respect to the collection of the check in

question, it becomes unimportant to view the decisions which are apparently in hopeless division concerning the legal relation existing between the initial bank and its correspondent. Believing that plaintiff did not receive the proceeds of the check in actual funds, and recalling the words ,of the contract that "items previously credited may be charged back to the depositor's account," we think error was made by the trial court in awarding judgment to defendant for $190.37, with interest thereon at 6 per cent from October 4, 1911, and for costs and disbursements, and that the judgment must be annulled and a new one in lieu thereof entered in favor of plaintiff for $394.63, with interest thereon at 6 per cent from October 4, 1911.

REVERSED AND JUDGMENT RENDERED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE BEAN and MR. JUSTICE EAKIN concur.