(114 So. 188)

**DUDLEY v. PHENIX–GIRARD BANK.**
(3 Div. 807.)

Supreme Court of Alabama.  Oct. 20, 1927.

**1. Banks and banking ⟪156, 171(1)—Bank accepting checks for deposit is collection agent for depositor, and liable for loss by failure to collect through own fault.**

Bank accepting checks for deposit became agent of depositor for their collection, and became liable for loss sustained through failure to collect because of fault of its own.

**2. Banks and banking ⟪171(3)—Bank to which defendant bank sent check for collection exercised due diligence by forwarding check to drawee bank for payment (Code 1923, § 9222).**

In suit against bank for loss sustained by its failure to collect check deposited with it, bank to whom defendant bank sent check for collection exercised due diligence by forwarding check to drawee bank for payment, in view of Code 1923, § 9222, authorizing such procedure.

**3. Banks and banking ⟪171(1)—Bank accepting out of town drafts for collection need not dispatch officer or special messenger to obtain payment.**

Bank accepting for collection drafts on out of town points more or less distant, for accommodation of depositors, cannot be expected to dispatch one of its own officers or special messenger to obtain payment of bills.

**4. Banks and banking ⟪175(2)—Common counts and counts in trover held not sustainable against bank for loss in failing to collect check credited to depositor subject to payment.**

Where bank accepting out of town checks for collection credited checks to depositor subject to payment and no money was received from collections, common counts against bank for loss from failure to collect and counts in trover could not be sustained.

[1] Ante, p. 156.

**5. Banks and banking ☞175(3)—Bank forwarding check for collection to correspondent which mailed it to drawee bank for payment held not liable for loss on failure to collect.**

In suit by depositor of out of town check against collecting bank for loss sustained by failure to collect check before drawee bank's insolvency, evidence that defendant bank sent check to correspondent in accordance with its established usage, that correspondent mailed check to drawee bank for payment, and that defendant bank informed depositor that it had no information whether checks had been paid, did not charge collecting bank with liability for loss.

**6. Banks and banking ☞171(6)—Bank receiving paper for collection merely undertakes to exercise care in selecting subagent and in transmitting paper, and is not liable for default of subagent.**

Contract implied on part of bank taking paper for collection is simply an undertaking by bank to exercise care and diligence in selection of proper and suitable subagent and in transmitting papers, and, if bank has done that, it is not liable for default of subagent.

Appeal from Circuit Court, Montgomery County; Walter B. Jones, Judge.

Action by H. R. Dudley against the Phenix-Girard Bank. From a judgment for defendant, plaintiff appeals. Affirmed.

B. de G. Waddell, of Seale, and Hill, Hill, Whiting, Thomas & Rives, of Montgomery, for appellant.

A bank, which receives a check for collection and enters its face value as a deposit credit of its owner, becomes the agent of the owner to collect it; and if the bank fails to collect the check, through fault of its own, it is liable to the holder for damages. Jefferson County Sav. Bank v. Hendrix, 147 Ala. 675, 39 So. 295, 1 L. R. A. (N. S.) 246. Neither the Massachusetts rule nor the New York rule as to the liability of a bank undertaking the collection of out of town items has been adopted in Alabama. 3 R. C. L. 622; Eufaula Gro. Co. v. Mo. Nat. Bank, 118 Ala. 408, 24 So. 389. Under either rule appellant was entitled to recover. The Massachusetts rule does not countenance the sending of a check to a bank more remote than the bank of deposit, then to two other banks, and finally to the drawee bank. If the appellee had sent the checks first to the drawer bank, this would have been due diligence. Code 1923, § 9222. The collecting bank's duty did not cease after it transmitted the paper to a correspondent bank. Second Nat. Bank v. Merchants' Nat. Bank, 111 Ky. 930, 65 S. W. 4, 55 L. R. A. 273, 98 Am. St. Rep. 439. The bank of deposit was bound to respect the specific instructions under which it received the checks. Hutchinson v. Nat. Bank, 145 Ala. 201, 41 So. 143. The New York rule is the better and more uniform rule. Exchange Nat. Bank v. Third Nat. Bank, 112 U. S. 276, 5 S. Ct. 141, 28 L. Ed. 722; Douglas v. Fed. Res. Bank, 271 U. S. 489, 46 S. Ct. 554, 70 L. Ed. 1051; 59 Fla. 163, 52 So. 719, 52 L. R. A. (N. S.) 608, 668; Black, Judicial Precedents, 269; 15 C. J. 930.

Denson & Denson, of Opelika, and Steiner, Crum & Weil, of Montgomery, for appellee.

Appellee was impliedly authorized to appoint other agents to make the collection. 2 Michie's Banks and Banking, 1404; Eufaula Gro. Co. v. Mo. Nat. Bank, 118 Ala. 408, 24 So. 389. Alabama has followed the Massachusetts rule of liability. Stone River Nat. Bank v. Lerman Mill Co., 9 Ala. App. 322, 63 So. 776; Id., 185 Ala. 673, 64 So. 1019; Alexander v. Birmingham, T. & S. Co., 206 Ala. 50, 89 So. 66, 16 A. L. R. 1079. It is the more just and reasonable. Tillman County Bank v. Behringer, 113 Tex. 415, 257 S. W. 206, 36 A. L. R. 1302; 2 Morse, Banks and Banking, § 280; 1 Morse, §§ 276, 280. Appellant knew the First National Bank of Seale was the only bank in Seale, and that the checks would ultimately be sent to it for collection. When the checks reached the Seale Bank while it was still open for business, that bank became the agent of the appellant. Mercantile Co. v. Armour Pky. Co., 109 Miss. 470, 69 So. 293; Bank v. State, 215 N. Y. 76, 109 N. E. 138, L. R. A. 1918F, 1089, Ann. Cas. 1917A, 500; 1 Dan. Neg. Inst. (6th Ed.) § 326a; Porter's Dig. Bank Law, § 1569a. Appellant could not recover on the common counts, because the relation of debtor and creditor between appellee and appellant was never created. Jefferson County Bank v. Hendrix, 147 Ala. 670, 39 So. 295, 1 L. R. A. (N. S.) 246. Appellant could not recover under counts as upon a special agreement. There was no evidence of such a special agreement, and proof of the making of an implied agreement is not sufficient to support the averment of an express one. 13 C. J. 748; Lawrenceburg R. M. Co. v. Jones, 204 Ala. 59, 85 So. 719; U. S. H. & A. Ins. Co. v. Savage, 185 Ala. 233, 64 So. 340. Actual loss suffered because of the asserted failure to present or collect the checks was necessary to authorize a recovery. Jefferson County Bank v. Hendrix, supra; First Nat. Bank v. Henry, 159 Ala. 367, 49 So. 97; 2 Michie's Banks and Banking, 1517. Whether there was or was not negligence on the part of either bank, or whether presentment was or was not made within a reasonable time, were questions of fact for the trial judge. Branch Bank v. Gaffney, 9 Ala. 153; M. & E. R. Co. v. Trebles, 44 Ala. 255.

SAYRE, J. On November 16, 1923, appellant deposited with appellee bank for collection the check of Anderson, Benton & Co. drawn on the First National Bank of Seale for the sum of $1,918.78, and his personal check on the First National Bank of Seale,

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

payable to appellee, for the sum of $686.64. On December 3, 1923, a national bank examiner took charge of the bank at Seale and its doors were closed, appellant's checks remaining unpaid. Appellant declared in a number of counts—the common counts and others—charging in the special counts that appellee failed to exercise due diligence in presenting the checks to the bank at Seale or failed to give due and timely notice of nonpayment, whereby appellant lost the opportunity to collect. The case being tried by the court without a jury on the general issue, judgment went for appellee.

[1] By accepting the checks for deposit appellee bank became the agent of appellant for their collection. If appellee failed to collect through fault of its own it became liable to the owner and depositor for the loss sustained by him through such failure. Jefferson County Bank v. Hendrix, 147 Ala. 670, 39 So. 295, 1 L. R. A. (N. S.) 246.

As for aught appearing in the record in this case, appellee, proceeding according to the permit of section 9222 of the Code of 1923, might have discharged its duty in the premises by forwarding the checks to the drawee bank at Seale. That section, enacted in 1919, provides as follows:

"*Due Diligence in Forwarding Checks Defined.*—Any bank, banker, or trust company, hereinafter called bank, organized under the laws of, or doing business in this state, receiving for collection or deposit, any check, note or other negotiable instrument drawn upon or payable at any other bank, located in another city or town whether within or without this state, may forward such instrument for collection directly to the bank on which it is drawn or at which it is made payable, and such method of forwarding direct to the payer, shall be deemed due diligence and the failure of such payer bank, because of its insolvency or other default, to account for the proceeds thereof, shall not render the forwarding bank liable therefor, if such forwarding bank shall have used due diligence in other respects in connection with the collection of such instrument."

Proceeding otherwise, and in accordance with its established usage in such cases, appellee, doing business at Girard, 18 miles distant from Seale, sent the checks to its correspondent at Birmingham, the First National Bank of Birmingham, by which, November 19th, they were placed with the Birmingham Branch of the Federal Reserve Bank, by which, on November 20th, they were indorsed and forwarded to the Federal Reserve Bank at Atlanta, Ga. On the next succeeding day they were sent by mail to the drawee bank at Seale, where they remained unpaid until December 3d, when, as we have indicated, that bank was closed by an officer of the federal government. From November 16th to and including December 3d, it is agreed, the books of the drawee bank showed balances in favor of appellant and Anderson, Benton & Co., respectively, in excess of the amount of the checks in question. From November 17th to and including November 30th it is agreed that the books of the drawee bank showed cash balances ranging, to speak in round numbers, from $3,500 to $2,400; but it is not agreed, nor was it shown, that the bank had on hand during this period actual cash in the amounts shown by the books. December 3d, the drawee bank had on hand $943.87.

[2, 3] It appears from the foregoing statement that the Federal Reserve Bank at Atlanta did what the appellee bank might have done without incurring liability—aside from the question of negligent delay, to be considered presently—viz., forwarded the checks to the drawee bank for payment. Code, § 9222. That, as far as it went, was due diligence in virtue of the statute—about the wisdom of which we are not concerned—and sufficed to absolve the forwarding bank or banks of any charge of negligence in sending the checks directly to the drawee bank. Code, § 9222. Formerly the rule was otherwise. Jefferson County Bank v. Hendrix, 147 Ala. 670, 39 So. 295, 1 L. R. A. (N. S.) 246; Farley Bank v. Pollock, 145 Ala. 321, 39 So. 612, 2 L. R. A. (N. S.) 194, 117 Am. St. Rep. 44, 8 Ann. Cas. 370; Lowenstein v. Bresler, 109 Ala. 326, 19 So. 860. But that rule has been disposed of by the statute supra. Moreover, it appeared in the undisputed evidence that the drawee bank, the First National Bank of Seale, was the only bank located at Seale, as appellant knew. The evidence also warranted the conclusion that appellant was aware of the practice of the appellee bank to deal with collections as in this case. In the case thus presented it could hardly be expected that appellee bank, if it elected to deal with the collections in question otherwise than as the statute permitted, would deal with them otherwise than as it did. Banks accepting for collection drafts upon out of town points, more or less distant, for the accommodation of depositors, cannot be expected to dispatch one of its own officers or a special messenger to obtain payment of the bills. Dorchester Bank v. New England Bank, 1 Cush. (Mass.) 186. Banks may get some incidental benefit out of such collections, but the primary purport of such transactions is the accommodation of the depositor. Some counts very clearly proceed upon the theory that appellee should have sent an agent from Girard to Seale to demand payment at the latter place. On considerations stated, our judgment is that such counts could not be sustained on the evidence.

[4] The common counts could not be sustained for reasons pointed out in Jefferson County Bank v. Hendrix, supra. Appellee received the checks for collection. They were credited to appellant "subject to payment." Nor was any money received from the collections undertaken. If appellee or its agents were guilty of actionable negligence resulting

in loss to appellant, a different form of action should have been employed. For like reasons the counts in trover were without support.

[5] Counts 16 and 19, in which appellant sought to charge appellee on the ground that it had failed to give appellant due and timely notice of nonpayment by the drawee bank at Seale, are the only counts affording any reasonable ground for argument. The proof is that on a number of occasions after the deposit of the checks appellant applied to appellee for information as to whether the checks had been paid and was informed that appellee had no information. That, in the circumstances, meant nothing on which to charge appellee unless indeed the Federal Reserve Bank at Atlanta can be held to have been the agent of appellee and in that capacity should have forwarded information which would have been available to appellant, for, on the undisputed facts, appellant knew as much about the subject of inquiry as did appellee. Conceding, then, for the argument, that the Federal Reserve Bank was negligent in its dealing with the checks, the question of law presented is whether that bank was the responsible agent of appellant or appellee in the matter of collecting the checks.

As affected by the fact that it sent the checks to its correspondent for collection, there are two lines of decision with respect to the duty and liability of appellee bank in the premises. The substance of the two lines is thus briefly stated in 3 Ruling Case Law, at page 622:

"One line of authorities holds to the rule that the collecting bank is liable only for the selection of a suitable local agent with whom to intrust the collection, and that the agent so selected becomes the agent of the owner of the paper; while, on the other hand, it is held that the forwarding bank makes the local agent its own subagent, and is liable for any neglect on the part of the subagent."

It is clear on the undisputed facts and the law as heretofore stated that neither the First National Bank of Birmingham nor the Branch of the Federal Reserve Bank at Birmingham were guilty of any negligence. They forwarded the checks promptly according to the custom of banks in such cases and, as it must be inferred from the evidence, in agreement with appellant's understanding of the course the collections were to take, if that is of any consequence, nor was it shown that either of them had any information which, if communicated to appellant, might have given an opportunity for collection in any way. We think it proper therefore to treat the case as presenting the question whether the Federal Reserve Bank at Atlanta should be considered as the agent of appellee or appellant and to treat that question as it would need be treated if the collections had been sent directly by appellee to the bank at Atlanta. The first-stated rule is known in the books as the Massachusetts rule; the second as the New York rule. An impressive majority of the state courts follow the first rule; a very respectable minority of the state courts and the Supreme Court of the United States follow the second.

The decision in Eufaula Grocery Co. v. Missouri National Bank, 118 Ala. 408, 24 So. 389, referred to in the briefs, expressly pretermitted a committal of the court to either of the stated doctrines, but for the purposes of that case assumed the rule as first stated above as the applicable law—that being the more favorable to the defendant in that case—for the reason, as the court stated, that the action there was well brought under either rule.

In Stone River Nat. Bank v. Lerman Milling Co., 9 Ala. App. 322, 63 So. 776, the Court of Appeals definitely committed itself to the Massachusetts doctrine, but did so on the assumption that this court had so done in Eufaula Grocery Co. v. Missouri Bank, supra. We have stated the process followed by the court in the Eufaula Grocery Co. Case.

In Alexander v. Birmingham Trust Co., 206 Ala. 50, 89 So. 66, 16 A. L. R. 1079, the decision in the Stone River Case was cited with the statement that it had been reviewed and approved by this court in 185 Ala. 673, 64 So. 1019. But the last citation shows a memorandum decision, and we have no means of ascertaining just what questions were presented to this court for decision by the application for certiorari to the Court of Appeals. The relevant decision in Alexander v. Birmingham Trust Co. was simply that the proceeds of a draft in the hands of a correspondent bank were the property of the owner of the draft and subject to garnishment against such owner. It thus appears that there has been no definite committal of this court to the Massachusetts rule.

[6] However, our judgment is that the Massachusetts rule is more consonant with what must be the mutual understanding of the parties in such cases, i. e., that the contract implied on the part of a bank taking paper for collection—for of course the parties by express contract may arrange the matter as they will—is simply an undertaking on the part of the bank to exercise care and diligence in the selection of a proper and suitable subagent and in transmitting the paper, and, if the bank has done that, it is not liable for the default of its correspondent. That rule seems to us to have the support of the better reasoned cases. The question at issue is discussed learnedly and at length in the cases and in the editorial notes to Brown v. People's Bank, 52 L. R. A. (N. S.) 608; Tillman County Bank v. Behringer, 36 A. L. R. 1302; City of Douglas v. Federal Reserve Bank, 44 A. L. R. 1425, controlled, of course, by the decision of the Supreme Court of the United States in Exchange National Bank v. Third National Bank, 112 U. S. 276, 5 S. Ct. 141, 28 L. Ed. 722; Cohen v. Tradesmen's National Bank, 262 Pa. 76, 105 A. 43, 4 A. L. R. 518, of which

last-named case the annotator correctly observed that "it seems quite clear that the conclusion in Cohen v. Tradesmen's National Bank is correct under either theory," as was the case in Eufaula Grocery Co. v. Missouri Bank, supra; and in the texts of 7 C. J. §§ 262, 263; 1 Morse on Banks and Banking (5th Ed.) §§ 272, 275; 2 Michie, Banks & Banking, § 162 (2); 3 R. C. L. § 251, p. 622. In 1 Morse on Banks and Banking this question is discussed at some length and the cases are considered. The author gives his unqualified approval to the Massachusetts rule; shows that the authority of Chief Justice Marshall rests on the side of that rule notwithstanding the decision in Exchange Bank v. Third National Bank, supra; and discloses the "invincible reasoning" of the rule stated by the Massachusetts cases, Fabens v. Mercantile Bank, 23 Pick. 330, 34 Am. Dec. 59, where Chief Justice Shaw cites Chief Justice Marshall, and Dorchester Bank v. New England Bank, supra. The author says that "in the case of collection, the usage to forward to a subagent is well established, and the parties must be presumed to contract in reference to it," and quotes Story on Agency, § 201, as follows: "If there exists in relation to the business a known and established usage of substitution, the principal would be held to have expected and authorized such substitution," and "a substitute appointed by an agent, who has the power of substitution, becomes the agent of the original principal and may bind him by his acts, and is responsible to him as his agent." In 3 R. C. L. ubi supra, we think we find the correct rule clearly stated as follows:

"It would seem the more reasonable and just construction of the undertaking of the bank in which the paper is deposited for collection, is that when the paper is payable at another and distant place the bank so receiving the bill discharges itself of liability by transmitting the same, in due time, to a suitable and reputable bank or other agent at the place of payment."

The case is also well stated by the Supreme Court of Texas in Tillman County Bank v. Behringer, supra, decided so recently as 1923, where the court, freely conceding the desirability of agreement with the rule of the federal courts in questions arising in commercial law, resolves, on what it considers to be "the weight of better reasoning," to follow the doctrine of a majority of the state courts. Without undertaking to state every consideration that appears to have influenced the courts to one decision or the other—for they are easily accessible in the authorities cited—we have stated in brief those considerations which seem to us to be conclusive.

The judgment must be affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.