142 So. 66

## JEFFERSON COUNTY BUILDING & LOAN ASS'N v. SOUTHERN BANK & TRUST CO.

### 6 Div. 34.

Supreme Court of Alabama.

May 26, 1932.

W. H. Woolverton, of Birmingham, for appellant.

Coleman, Spain, Stewart & Davies, of Birmingham, for appellee.

**THOMAS, J.**

The suit by appellant was based on the common counts. There was judgment for defendant by the court without a jury. The assignments of error challenge the correctness of the ruling under the evidence.

The passbook was in evidence, showing deposits by plaintiff with defendant on the respective dates, and in the amounts of, January 7, 1930, $22,922.57, and January 8, 1930, $4,018.03. The items involved in the suit were included in "those two deposits," as shown by the evidence of Mr. Yeilding, Jr., who was secretary and treasurer of plaintiff corporation. The latter admitted receipt of the charge tickets in "unpaid exchange" for the two amounts as "Items on Bank of Ensley."

The respective books of entry and "deposit slips" were in evidence showing the items of credit and containing the agreements set up in the special pleas.

The evidence exhibited by the bill of exceptions proves the material averments of the special pleas. The relation maintained between the defendant bank and the Bank of Ensley was that of a collection account, items being sent to the Bank of Ensley for collection on itself and other resident banks, and such entries as would follow the transmission or remittance of the amount or amounts so collected.

The checks involved in this case and deposited by plaintiff with defendant were sent for collection on a form or collection letter, which Mr. Sterrett explained as follows: " * * * We wrote them on a form which we term a collection letter, which had this heading: The following items for collection. We listed these items on a collection letter and mailed them to them for collection. That had been going on ever since our bank had been in business, about five years at that time. With reference to this transaction, we received those items on January 8th. One de-

posited on the 7th; one was deposited on the 8th. Those items were sent to the Bank of Ensley; mailed them that day. We drew a draft on the Bank of Ensley that same day with these items for collection. Those collections were never paid over to us. We did not ever receive any actual funds on those items. We did not ever receive any solvent credit on those items."

That witness further testified unequivocally that, " * * * when they collect them, why, they would pay the draft that had been drawn against them—wipe the account out. If the items were not paid on presentation they would charge them back against the collection account and return them to us. That is the reason we adopted that practice. We never made any deposit ticket or did anything of that sort for the Bank of Ensley. The only account we had with the Bank of Ensley was this collection account."

Though this was different from the customs of other banks, it was the same custom and course of its business, in use and pursued by defendant from a time prior to the opening of the account by plaintiff, to and after the transactions made the basis of this suit.

The following propositions are established by our decisions:

1. When negotiable paper is deposited in a proper correspondent bank "for collection" only, the depositor remains the owner as to the collecting bank, in the absence of a special agreement to the contrary. In such case the collecting bank takes such paper as agent for the owner; and the mere provisional credit as cash, with liberty to draw thereon, will not change this rule, applicable where negotiable paper is transmitted by one banker to another for collection by the latter. It is further established that such depositor could not recover for money had and received upon failure of such initial collecting bank to receive the money—if collected by the bank to which it was sent—from such immediate collecting bank where the bill or draft is payable. It is against the latter that assumpsit could be maintained. Eufaula Grocery Co. v. Missouri Nat. Bank, 118 Ala. 408, 24 So. 389; Morris & Co. v. Alabama Carbon Co., 139 Ala. 620, 36 So. 764; Jefferson County Savings Bank v. Hendrix, 147 Ala. 670, 39 So. 295, 1 L. R. A. (N. S.) 246; Stone River Nat. Bank v. Lerman Milling Co., 9 Ala. App. 322, 63 So. 776; Id., 185 Ala. 673, 64 So. 1019; Commercial Nat. Bank v. Armstrong, 148 U. S. 50, 13 S. Ct. 533, 37 L. Ed. 363, 52 L. R. A. (N. S.) 611, 621, 640, note. In Alexander v. Birmingham Trust & Savings Co., 206 Ala. 50, 52, 89 So. 66, 67, 16 A. L. R. 1079, this court said:

"So far as the question here concerned is involved, we consider the case of Stone River National Bank v. Lerman Milling Co., 9 Ala. App. 322, 63 So. 776, reviewed and approved

by this Court in Ex parte Stones River National Bank, 185 Ala. 673, 64 So. 1019, is decisive of this appeal. The holding in that case (9 Ala. App. 322, 63 So. 776), is well expressed in the second headnote as follows:

" 'Where the drawer of a draft indorsed it to the bank when depositing it for collection and the bank credited the drawer with the amount on his deposit account, the bank did not thereby become the purchaser of the draft, since its liability was not absolute, but conditioned upon the collection of the draft; hence, the proceeds of the draft in the hands of another bank, to whom it was sent for collection, belonged to the drawer, for which he could maintain assumpsit, and as such was subject to garnishment by his creditor.' "

■ 2. Neither the deposit of a check with a bank for collection and the mere entry on its books of the deposit of money in favor of the owner, nor the negligence of such bank in and about the collection of the check from the drawee bank, whereby there is failure to collect it, make such check the property of a collecting bank. In such case the bank in which the deposit is made becomes the agent of the owner of the check to collect the same. Jefferson County Savings Bank v. Hendrix, 147 Ala. 670, 39 So. 295, 1 L. R. A. (N. S.) 246.

3. In Dudley v. Phenix-Girard Bank, 216 Ala. 591, 594, 114 So. 188, 191, the authorities were again considered, and the opinion concluded as follows:

" * * * Our judgment is that the Massachusetts rule is more consonant with what must be the mutual understanding of the parties in such cases, i. e., that the contract implied on the part of a bank taking paper for collection—for of course the parties by express contract may arrange the matter as they will—is simply an undertaking on the part of the bank to exercise care and diligence in the selection of a proper and suitable subagent and in transmitting the paper, and, if the bank has done that, it is not liable for the default of its correspondent. That rule seems to us to have the support of the better reasoned cases. The question at issue is discussed learnedly and at length in the cases and in the editorial notes to Brown v. People's Bank, 52 L. R. A. (N. S.) 608; Tillman County Bank v. Behringer, 36 A. L. R. 1302; City of Douglas v. Federal Reserve Bank, 44 A. L. R. 1425, controlled, of course, by the decision of the Supreme Court of the United States in Exchange National Bank v. Third National Bank, 112 U. S. 276, 5 S. Ct. 141, 28 L. Ed. 722; Cohen v. Tradesmen's National Bank, 262 Pa. 76, 105 A. 43, 4 A. L. R. 518, of which last-named case the annotator correctly observed that 'it seems quite clear that the conclusion in Cohen v. Tradesmen's National Bank is correct under either theory,' as was the case in Eufaula Grocery Co. v. Missouri Bank, supra; and in the texts of 7 C. J. §§

262, 263; 1 Morse on Banks and Banking (5th Ed.) §§ 272, 275; 2 Michie, Banks & Banking, § 162 (2); 3 R. C. L. § 251, p. 622. In 1 Morse on Banks and Banking this question is discussed at some length and the cases are considered. The author gives his unqualified approval to the Massachusetts rule; shows that the authority of Chief Justice Marshall rests on the side of that rule notwithstanding the decision in Exchange Bank v. Third National Bank, supra; and discloses the 'invincible reasoning' of the rule stated by the Massachusetts cases, Fabens v. Mercantile Bank, 23 Pick. 330, 34 Am. Dec. 59, where Chief Justice Shaw cites Chief Justice Marshall, and Dorchester Bank v. New England Bank [1 Cush. 177], supra. The author says that 'in the case of collection, the usage to forward to a subagent is well established, and the parties must be presumed to contract in reference to it,' and quotes Story on Agency, § 201, as follows: 'If there exists in relation to the business a known and established usage of substitution, the principal would be held to have expected and authorized such substitution,' and 'a substitute appointed by an agent, who has the power of substitution, becomes the agent of the original principal and may bind him by his acts, and is responsible to him as his agent.' In 3 R. C. L. ubi supra, we think we find the correct rule clearly stated as follows:

" 'It would seem the more reasonable and just construction of the undertaking of the bank in which the paper is deposited for collection, is that when the paper is payable at another and distant place the bank so receiving the bill discharges itself of liability by transmitting the same, in due time, to a suitable and reputable bank or other agent at the place of payment.' "

See Hendricks v. Jefferson County Savings Bank, 153 Ala. 636, 45 So. 136, 14 L. R. A. (N. S.) 686; Stone River Nat. Bank v. Lerman Milling Co., 9 Ala. App. 322, 63 So. 776; Dudley v. Phenix-Girard Bank, supra.

4. In volume II, Michie on Banks and Banking, § 159, pages 1380–1384, the subject is thus stated: "When negotiable paper is deposited in a bank for collection, the depositor remains the owner, as to the collecting bank, in the absence of special agreement to the contrary (Eufaula Grocery Co. v. Missouri Nat. Bank, 118 Ala. 408, 24 So. 389; Morris & Co. v. Alabama Carbon Co., 139 Ala. 620, 36 So. 764), and the bank takes such paper simply as agent for the owner. The mere provisional credit as cash, with liberty to draw thereon, will not change the rule. The question is one of fact rather than of law. The general rule just laid down is also applicable where negotiable paper is transmitted by one bank or banker to another for collection by the latter, except where the collection has been fully completed by the receiving bank or its agent, and the terms of the arrange-

ment show that it was not intended that the proceedings be kept on special deposit until remitted."

■ When a bank receives a check for collection and return with instructions to remit by draft, and immediately draft for the amount is remitted to the sending bank by the correspondent, and payment of this draft is not made, the bank with which the check is deposited for collection is not liable to the depositor, if the agreement of the collection was that it should only be liable when actual funds or solvent credit should come into its possession. 1 Morse on Banks and Banking (6th Ed.) § 249; Security Savings & Trust Co. v. King, 69 Or. 228, 138 P. 465.

■ 5. The effect of the cases is that no mere bookkeeping between a bank and subagent will change the actual status, express or implied, of the parties, or destroy the right which arises out of the real transaction. That is to say, the mere crediting of a remitting bank by a subagent with the proceeds of collection will not preclude the owner of the paper from recovering the proceeds from the collecting bank. Heid v. Commercial National Bank (Tex. Com. App.) 240 S. W. 908, 24 A. L. R. 904; 1 Morse on Banks and Banking (6th Ed.) § 250; 2nd Michie on Banks and Banking, §§ 159, 162, 163, 164; Franklin County Nat. Bank v. Beal (C. C.) 49 F. 606, 607; Holder v. Western German Bank (C. C.) 132 F. 187.

■ 6. It results from the foregoing that the insolvency of a collecting bank to which the receiving bank sent a check or draft for collection, if the collection on the check or draft has been made before it closes for business, and the amount has not been actually paid to the remitting bank, does not change the status of the receiving bank and the depositor as that of principal and agent into the relationship of depositor and debtor. And especially is this true when the deposit is made with an understanding or condition, express or implied, that the depositor is not to be actually credited with the amount of the check or draft until it is actually paid to the receiving bank in money or solvent credit. 2 Michie on Banks and Banking, § 166, et seq.; 3 R. C. L. pp. 622 to 630; Los Angeles' Investment Co. v. Home Savings Bank, 180 Cal. 601, 182 P. 293, 5 A. L. R. 1193; Heid v. Commercial National Bank (Tex. Com. App.) 240 S. W. 908, 24 A. L. R. 904; Security Savings & Trust Co. v. King, 69 Or. 228, 138 P. 465.

■ 7. It follows that a bank which receives a check for collection may expressly relieve itself from liability for the negligent acts of correspondent banks employed in making the collection by an express agreement to that effect with the depositor. Dudley v. Phenix-Girard Bank, supra; Heid v. Commercial National Bank, supra.

The usual manner of entering into such an agreement with the depositor is to have the stipulation exempting the bank printed upon the deposit slip handed in by the depositor at the time of depositing his checks or in the book of deposit in which the entry is made, by either or both evidences of such limitation of liability. And it has been held that the words on deposit slips, "all items credited subject to final payment," mean that the credit is given subject to the final payment to the bank. Brady on Bank Checks (2d Ed.) § 280, page 451; Capital Grain & Feed Co. v. Federal Reserve Bank of Atlanta (D. C.) 3 F.(2d) 614.

■ And, by the weight of authorities, it is held that, if the depositor accepts and retains a passbook, wherein are printed rules of the bank respecting the repayment of deposits, he is deemed to acquiesce therein and they become a part of the contract between the bank and the depositor. Brady on Bank Checks, supra; Heid v. Commercial National Bank, supra; Chase v. Waterbury Savings Bank, 77 Conn. 295, 59 A. 37, 69 L. R. A. 329, 1 Ann. Cas. 96; Wall v. Provident Institution for Savings, 6 Allen (Mass.) 320; Ferguson v. Harlem Sav. Bank, 43 Misc. Rep. 10, 86 N. Y. S. 825; Wegner v. Second Ward Savings Bank, 76 Wis. 242, 44 N. W. 1096; Falls City Woolen Mills v. Louisville Nat. Banking Co., 145 Ky. 64, 140 S. W. 66; Donlan, Ex'r, v. Provident Institution for Savings, 127 Mass. 183, 34 Am. Rep. 358.

■ According to decisions in some jurisdictions, in the absence of instructions, the drawee bank is held not a proper agent for selection by the transmitting or collecting bank. Lowenstein & Bros. v. Bresler, 109 Ala. 326, 329, 19 So. 860; Farley Nat. Bank v. Pollock & Bernheimer, 145 Ala. 321, 39 So. 612, 2 L. R. A. (N. S.) 194, 117 Am. St. Rep. 44, 8 Ann. Cas. 370; Jefferson County Savings Bank v. Hendrix, 147 Ala. 670, 39 So. 295, 1 L. R. A. (N. S.) 246. This rule is changed by our statutes, General Acts 1919, page 856, § 1, Code of 1923, § 9222; Capital Grain & Feed Co. v. Federal Reserve Bank of Atlanta (D. C.) 3 F.(2d) 614, 615; Dudley v. Phenix-Girard Bank, 216 Ala. 591, 593, 114 So. 188; Marx & Co. v. Bankers' Credit Life Ins. Co., 224 Ala. 249, 139 So. 421.

The evidence shows that the defendant did not carry a deposit account with the Bank of Ensley, but that its account was for collection only, consisting of items sent to said bank for collection and the incidental entries of bookkeeping that follow such transmission for collection, and the charging back of the amount or amounts not collected. The witness Sterrett further testified that the instant checks were sent on its form designated as a collection letter, headed "The following items for collection"; that this was according to its long prevailing custom in that and adjacent territory and in dealing with

the Ensley Bank, and that such was its custom and conduct of business when plaintiff opened its account and that obtained to and after the transaction made the basis of this suit.

The evidence further shows that, on making the deposits, plaintiff's passbook, deposit slips, and signature cards contained stipulations of agreement to the rules and regulations of the bank; and, as printed on the deposit slips and signature cards, "were deposited and received for collection only"; and that the "bank shall be liable only when proceeds in actual funds or solvent credits shall have come into its personal possession"; that items might "be sent direct to the bank upon which they are drawn," and each bank to which they were sent was the "agent of depositor," etc. It was further shown in the rules and regulations printed on the back of the signature cards that "delivery to this bank of items for collection, credit or remittance shall constitute acceptance of the above conditions by the depositor." That is, similar rules and regulations were set forth on the passbook, deposit slips, and signature cards, when the same are considered as a part of one system of business, custom, usage, and conduct of that business.

The uncontradicted and positive testimony in this case shows that the Southern Bank & Trust Company never received currency for the collection of the checks deposited by the plaintiff and involved in this case; never received solvent credit; and the positive and undisputed testimony shows that Southern Bank & Trust Company followed its regular course of dealing to effect the collection of the checks involved. Upon such facts, and in view of the principles of law declared in the foregoing authorities, the trial court, without the intervention of a jury, rendered judgment in favor of the defendant. And the judgment of the trial court is affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and FOSTER, JJ., concur.