BAY STATE MILLING COMPANY v. HARTFORD ACCIDENT AND INDEMNITY COMPANY.[1]

February 23, 1935.

No. 30,244.

*Kingman, Cross, Morley & Cant* and *Alfred A. Stoll,* for appellant.

*Junell, Driscoll, Fletcher, Dorsey & Barker* and *Joseph H. Colman,* for respondent.

LORING, JUSTICE.

In a suit by a depositor upon a policy insuring it against loss through failure of any bank to pay to the insured the money such bank may collect on any demand draft forwarded from any of the insured's offices, the trial court overruled a demurrer to the complaint.

[1]Reported in 259 N. W. 4.

518

It was stipulated that the only question presented here is whether the First National Bank of Minneapolis is liable to its depositor, the plaintiff herein, by reason of the facts alleged in the complaint. If the bank is liable plaintiff has suffered no loss. If it is not liable plaintiff is admittedly entitled to recover.

February 16, 1933, plaintiff drew on the Elite Baking Company of South Akron, Ohio, a draft payable on arrival of a shipment of certain goods. The draft was made to the order of the First National Bank of Minneapolis and deposited for collection with that bank February 18, 1933, on which day it was forwarded to the Union Trust Company of Cleveland, Ohio, with instructions to collect and make return when the draft was actually paid. It was collected on February 24, 1933, and, according to established usage of the two banks, credited to the account of the Minneapolis bank. On the same day advice of collection was mailed to the Minneapolis bank, and this was received Monday morning, February 27, 1933.. On that morning the Cleveland bank did not open for business and has not since done so. It is conceded that there was no negligence on the part of the Minneapolis bank in selecting the Cleveland bank through which to make collection of the draft.

Our statute, 2 Mason Minn. St. 1927, § 7233-1, which was L. 1927, c. 138, § 1, provides as follows:

"Any bank, savings bank or trust company (hereinafter called 'bank') doing business in this state, in receiving items for deposit or collection, in the absence of a written agreement to the contrary, shall act only as the depositor's collecting agent and shall have no responsibility beyond the exercise of due care. All such items shall be credited subject to final payment in cash or solvent credits. Such bank shall not be liable for default or negligence of its duly selected correspondents nor for losses in transit, and each correspondent so selected shall not be liable except for its own negligence. Such bank or correspondent may send items, directly or indirectly, to any bank including the payer, and accept its draft, check, or credit as conditional payment in lieu of cash. It may charge back any item at any time before final payment whether returned or not."

That statute changes the common law as it theretofore existed in this state in at least two respects. Before that time a collecting bank was regarded as an independent contractor responsible for the default of its agents, and it was not necessary to show that it had been negligent in selecting its agent, and such bank was responsible for accepting collections otherwise than in cash. Hommerberg v. State Bank, 170 Minn. 15, 212 N. W. 16; Federal Reserve Bank v. Malloy, 264 U. S. 160, 44 S. Ct. 296, 68 L. ed. 617, 31 A. L. R. 1261; Tobiason v. First State Bank, 173 Minn. 533, 217 N. W. 934. The legislature recognized that the usages and conditions of the banking business had changed and progressed to a point where our existing common law in this regard could not practically be applied in commerce. It therefore provided that a bank should not be liable for default or negligence on the part of a properly selected correspondent and that each correspondent should be liable only for its own negligence. Items received for collection, in the absence of contract, should be credited subject to final payment in cash or solvent credits, and a bank might send items directly or indirectly to any bank including the drawee or payor and accept as conditional payment in lieu of cash a draft, check, or credit. We think that the statute was remedial in its nature and calculated to correct the conditions under which it had become impracticable for the banks to conduct business. Therefore the statute does not require the strict construction contended for by the appellant, and it should be construed in the light of the practice generally prevailing among banks and known to the legislature whereby credit to the account of the forwarding bank was accepted in like manner as were drafts or checks. In the absence of statute, the collection of the draft and the crediting of the proceeds by the Cleveland bank to the Minneapolis bank would have constituted the Minneapolis bank the creditor of the Cleveland bank as in the case of other depositors; but the statute has stepped in and has said that that credit may be regarded as a conditional payment in lieu of cash. In order to give this provision of the statute effect we must hold that the Minneapolis bank did not become the unconditional debtor of the plaintiff until it had had an opportunity to

draw on the Cleveland bank against such payment, which was not final until then. The defendant, while admitting the necessity for construction of the statute, insists that this is not a practical rule because it leaves the time indefinite for what may be regarded as the final payment in cash. We do not think so. Had the Cleveland bank promptly remitted a draft, it could not have been collected before the bank closed, and the Minneapolis bank would not have been liable. It is apparent from the tenor of the statute that it was the purpose of the legislature to put credits on the same basis; therefore the Minneapolis bank was entitled to notice from the Cleveland bank that it had such credit and an opportunity given it promptly to draw against it. That opportunity would not extend beyond the time when it might have collected the draft had it received a draft instead of a notice of credit. We think this is a reasonable rule and a practical one in the ordinary course of banking business as well as a proper construction of the legislative intent. We adopt that construction.

On the precise point before us there is no authority in this state. In Jefferson County B. & L. Assn. v. Southern B. & T. Co. 225 Ala. 25, 30, 142 So. 66, 70, plaintiff deposited certain checks under an agreement whereby the defendant bank acted only as agent and would be liable "only when proceeds in actual funds or solvent credits shall have come into its personal possession." The defendant sent the checks to the Bank of Ensley for collection and drew a draft on that bank in the amount of the checks. The Ensley bank collected the checks, credited them to the defendant bank in a collection account, and attempted to pay the draft on it by giving a draft on another bank. It then charged that draft to the defendant bank on the collection account. The Ensley bank failed before its draft was cleared. The court held that neither the deposited checks nor their proceeds became the property of the defendant bank until the proceeds were actually received by it in funds or solvent credits according to the terms of the contract notwithstanding that on the books of the Ensley bank it had received a credit for these checks as collected. It held that such credits did not change the status of the receiving bank and the depositor

from principal and agent to debtor and creditor. The court there said [225 Ala. 29]:

"The effect of the cases is that no mere bookkeeping between a bank and subagent will change the actual status, express or implied, of the parties, or destroy the right which arises out of the real transaction. That is to say, the mere crediting of a remitting bank by a subagent with the proceeds of collection will not preclude the owner of the paper from recovering the proceeds from the collecting bank. Heid v. Commercial National Bank (Tex. Com. App.) 240 S. W. 908, 24 A. L. R. 904; 1 Morse on Banks and Banking (6th Ed.) § 250; 2nd Michie on Banks and Banking, §§ 159, 162, 163, 164; Franklin County Nat. Bank v. Beal (C. C.) 49 F. 606, 607; Holder v. Western German Bank (C. C.) 132 F. 187.

"It results from the foregoing that the insolvency of a collecting bank to which the receiving bank sent a check or draft for collection, if the collection on the check or draft has been made before it closes for business, and the amount has not been actually paid to the remitting bank, does not change the status of the receiving bank and the depositor as [sic] that of principal and agent into the relationship of depositor and debtor. And especially is this true when the deposit is made with an understanding or condition, express or implied, that the depositor is not to be actually credited with the amount of the check or draft until it is actually paid to the receiving bank in money or solvent credit. 2 Michie on Banks and Banking, § 166, *et seq.;* 3 R. C. L. pp. 622 to 630; Los Angeles Investment Co. v. Home Savings Bank, 180 Cal. 601, 182 P. 293, 5 A. L. R. 1193; Heid v. Commercial National Bank (Tex. Com. App.) 240 S. W. 908, 24 A. L. R. 904; Security Savings & Trust Co. v. King, 69 Or. 228, 138 P. 465. * * *

"And it has been held that the words on deposit slips, 'all items credited subject to final payment,' mean that the credit is given subject to the final payment to the bank. Brady on Bank Checks (2d Ed.) § 280, page 451; Capital Grain & Feed Co. v. Federal Reserve Bank of Atlanta (D. C.) 3 F. (2d) 614."

We regard the contract in the Alabama case as substantially like the provisions of our statute in regard to payment in cash or sol-

522

vent credits. See also First State Bank v. Taylor, 183 Ark. 967, 39 S. W. (2d) 519.

The order overruling the demurrer is affirmed.